[No. S164692. Feb. 18, 2010.]

KIMBERLY McCARTHER et al., Plaintiffs and Appellants, v.
PACIFIC TELESIS GROUP et al., Defendants and Respondents.

COUNSEL

Weinberg, Roger & Rosenfeld and David A. Rosenfeld for Plaintiffs and Appellants.

Paul, Hastings, Janofsky & Walker, J. Al Latham, Jr., Thomas E. Geidt, Laura N. Monfredini and Paul W. Cane, Jr., for Defendants and Respondents.

Erika C. Frank for California Chamber of Commerce as Amicus Curiae on behalf of Defendants and Respondents.

Seyfarth Shaw, Stacy D. Shartin, John A. Van Hook and Simon L. Yang for California Employment Law Council and Employers Group as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**MORENO, J.**—In this case we resolve whether Labor Code section 233, which permits an employee to use accrued paid sick leave to care for ill relatives, applies to paid sick leave policies that provide for an uncapped number of compensated days off. We conclude, contrary to the Court of Appeal, that Labor Code section 233 does not apply to paid sick leave policies that provide for an uncapped number of compensated days off.

### Background

Plaintiffs Kimberly McCarther and Juan Huerta brought this representative action against their respective employers, SBC Services, Inc., and Pacific Bell Telephone Company, and against Pacific Telesis Group, Advanced Solutions, Inc., Southwestern Bell Video Services, Inc., Pacific Bell Information Services, and SBC Telecom, Inc. (collectively, defendants). In their second

amended complaint, plaintiffs alleged three causes of action concerning defendants' failure to provide paid leave to care for employees' relatives in accordance with Labor Code[1] section 233.

According to the parties' stipulated statement of undisputed facts, plaintiff McCarther had been a service representative for one of defendants' companies since 1998, and plaintiff Huerta had worked for another of defendants' companies for over 25 years. Defendants are affiliated entities and have been signatories to various collective bargaining agreements, including the operative April 4, 2004, to April 4, 2009, collective bargaining agreement (the CBA) with Communications Workers of America, the labor union to which plaintiffs belong.

## A. Defendants' Sickness Absence and Attendance Management Policies

Section 5.01F of the CBA requires that employees be compensated for any day in which they miss work due to their own illness or injury for up to five consecutive days of absence in any seven-day period.[2] Once an employee returns to work following any period of absence, section 5.01F may again be triggered if the employee is absent for his or her own illness or injury. There is no bank of paid sick days that employees incrementally accrue over a period of time. There is no cap on the number of days employees may be absent from work under section 5.01F, nor is there a particular number of days that employees vest, earn, or accrue under the sickness absence policy. As defendants explain, "if an employee normally works a five-day schedule from Monday–Friday, is absent for an entire workweek due to an illness, returns to work the following Monday morning, and becomes ill during the day on Monday, the employee can leave work and be absent for five more continuous working days with full pay." The parties stipulated that defendants never maintained a policy or practice of paying employees under section 5.01F of the CBA for absences to care for ill family members, nor has plaintiffs' union ever asserted that section 5.01F covers absences for the illness of an employee's family member.

The CBA also contains an attendance management policy, which sets forth a schedule of progressive discipline that can be imposed when an employee is not meeting attendance standards. An employee is not meeting standards if he or she has eight or more absences in a 12-month period with no extenuating

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

[2] If an employee is disabled for eight or more days, the employee may receive short-term disability benefits; if an employee is disabled for more than a year, the employee may receive benefits pursuant to defendants' long-term disability plan.

circumstances, or if an employee has more than four full days of absence and three or more "occurrences" of absences in a 12-month period with no extenuating circumstances.

The attendance policy sets forth a progressive discipline scheme. If an employee fails to meet attendance standards, the employee is first counseled that further instances of absenteeism will result in discipline. If the employee has worked for the company for between five and 20 years, the progressive discipline policy mandates the following course for each successive absence: a written warning of a one-day unpaid suspension, a one-day unpaid suspension with a written warning of a two-day unpaid suspension, a two-day unpaid suspension with a written warning of termination, and termination. Employees with fewer than five years of service do not receive a two-day suspension, and are instead terminated after a one-day suspension and warning of termination.

Absences are excluded from this attendance management policy (and exempt from discipline) if they constitute protected leave under, among other laws, workers' compensation laws or the federal Family and Medical Leave Act of 1993 (29 U.S.C. § 2601 et seq.). The CBA provides employees with six "personal" days off per year, and absences taken as personal days are also excluded from the attendance management policy. Absences for an employee's illness, while compensated pursuant to section 5.01F of the CBA, nonetheless constitute an absence potentially subject to discipline within the meaning of the attendance policy.

B. *Plaintiffs' Claims*

Plaintiff McCarther was absent for seven consecutive workdays in 2004 to care for her ill children. McCarther was not paid for this absence, and did not request to be paid for this absence under the sickness absence or personal day off policies. McCarther instead requested that her leave be approved as Family Medical Leave Act protected leave, which her employer denied. She thereafter filed a grievance, which was also denied. During the pendency of her challenge, her absence was not counted as an occurrence of absence, and nearly a year after taking her seven-day leave she was counseled that she was meeting attendance standards. McCarther was never disciplined in connection with any absence to care for an ill family member, and, although she received one or two written warnings concerning her attendance, she was never suspended or terminated for an attendance-related reason.

Plaintiff Huerta was absent for five consecutive days to care for his ill mother. He requested that one day of his absence be paid pursuant to the personal day off policy, which was granted. He did not request that any other

days of his absence be paid pursuant to the sickness absence provision of the CBA, and he was not paid for those other days of absence. Huerta's absence was considered excluded from the attendance management policy, and Huerta was not disciplined for his absence. Huerta was never disciplined for any attendance-related reason during his employment.

## C. *Proceedings Below*

Before class discovery occurred and class certification issues were litigated, defendants filed a motion for summary judgment, and plaintiffs filed a motion for summary adjudication seeking a determination of whether defendants' sickness absence policy constituted sick leave within the meaning of section 233. The parties stipulated, and the court agreed, that this question was purely legal and appropriate for resolution at the summary judgment stage.

Relying on paragraphs 15 and 16 of the parties' stipulated statement of undisputed facts,[3] the plain meaning of section 233, and the legislative history of section 233, the trial court concluded that defendants' sickness absence policy did not constitute sick leave pursuant to section 233, and it granted defendants' motion for summary judgment.

Plaintiffs appealed and the Court of Appeal reversed the trial court's grant of summary judgment for defendants. The Court of Appeal held that defendants' sickness absence policy constituted sick leave within the meaning of section 233, and further concluded that section 234, which provides that employers may not discipline employees for taking leave under section 233, did not preclude defendants from disciplining employees for taking leave pursuant to section 233 to care for ill relatives in the same manner defendants disciplined employees for taking leave for their own illnesses or injuries. We granted defendants' petition for review.

## Discussion

Section 233, commonly referred to as the "kin care" statute, provides, in pertinent part, that "[a]ny employer who provides sick leave for employees shall permit an employee to use in any calendar year the employee's accrued and available sick leave entitlement, in an amount not less than the sick leave that would be accrued during six months at the employee's then current rate of entitlement, to attend to an illness of a child, parent, spouse, or domestic

---

[3] Paragraph 15 of the parties' statement provides that "employees do not earn, vest or accrue any particular number of paid sick days in a year under Section 5.01F." Paragraph 16 states, "Under [defendants'] system of sickness absence payments, employees do not have a 'bank' of paid sick days that they accrue in increments over a period of time."

partner of the employee." (§ 233, subd. (a).) The statute defines "sick leave" as "accrued increments of compensated leave." (§ 233, subd. (b)(4).) We examine here whether defendants' sickness absence policy, which provides for an uncapped number of paid days off for illness so long as each instance of absence continues for no longer than five consecutive days, constitutes sick leave within the meaning of section 233.

■ Our primary task when faced with a question of statutory construction is to determine the intent of the Legislature, and we begin by looking to the statutory language. (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1147 [74 Cal.Rptr.3d 81, 179 P.3d 882].) We must give "the language its usual, ordinary import and accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose. A construction making some words surplusage is to be avoided. The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386–1387 [241 Cal.Rptr. 67, 743 P.2d 1323].) If the statutory language is susceptible of more than one reasonable interpretation, we must look to additional canons of statutory construction to determine the Legislature's purpose. (*Olson v. Automobile Club of Southern California, supra,* 42 Cal.4th at p. 1147.) "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent." (*Dyna-Med, Inc. v. Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1387.)

The Court of Appeal concluded that "[s]ection 233 plainly applies to the 'sickness absence' policy" at issue here. We disagree. The statute requires employers that provide sick leave to permit employees to use "accrued and available sick leave" in "an amount not less than the sick leave that would be accrued during six months at the employee's then current rate of entitlement" to care for an ill family member.[4] (§ 233, subd. (a).) The statute, therefore, does not apply to any and all forms of compensated time off for illness, but only to "sick leave" as defined by the statute and only in the amount specified. The facts that section 233 defines sick leave as "accrued increments of compensated leave," and that the statute limits the amount of sick leave that can be used to care for an ill family member to "an amount not less than

---

[4] We note that most California employers are not required to provide sick leave to employees (Chin et al., Cal. Practice Guide: Employment Litigation (The Rutter Group 2008) ¶ 12:2345, p. 12-183; Cal. Chamber of Commerce, 2 Cal. Labor Law Dig. (2008) ch. 21, p. 548); accordingly, the statute applies only to employers that elect to do so. Employers in San Francisco City and County are required to provide sick leave to their employees pursuant to a local ordinance. (S.F. Admin. Code, ch. 12W; Cal. Chamber of Commerce, 2 Cal. Labor Law Dig., *supra*, ch. 21, p. 548.)

the sick leave that would be accrued during six months," indicates that the reach of the statute is limited to employers that provide a measurable, banked amount of sick leave.

The requirement in section 233 that employers that do provide sick leave must permit employees to use at least the "amount . . . that would be accrued during six months" for kin care cannot sensibly be applied to the sickness absence policy at issue here, because it is impossible to determine the amount of compensated time off for illness to which an employee might be entitled in a six-month period. Defendants' sickness absence policy does not provide a bank of sick leave hours or days to which the employee is entitled in a six-month or 12-month period, but rather provides that an ill employee will be compensated for up to five consecutive days for each instance of illness. But once the employee returns to work, he or she is again entitled to compensation for another five-day period of illness. The only limitation is imposed by defendants' attendance management policy, which provides a schedule of progressive discipline if an employee is absent eight days or more in a year absent extenuating circumstances. It is impossible to determine, therefore, the amount of compensated time for sick leave to which an employee might be entitled within six months and, thus, impossible to determine the amount of time an employee could use for kin care under section 233.

Plaintiffs contend, relying on the Court of Appeal's conclusion, that section 233 applies to sickness absence policies like the one at issue here, even if "one cannot in advance calculate with mathematical certainty the amount of sick leave that employees would actually use in a six-month period." Plaintiffs propose "at least two ways of calculating" kin care leave under an unlimited sickness absence policy like defendants'. First, plaintiffs suggest—and the Court of Appeal found persuasive—that because defendants' sickness absence policy applies to employees after one year of employment, "employees earn the use of five-day increments of compensated leave in the event of illness or injury . . . . This *is* their 'current rate of entitlement' 'during' any six months of any calendar year thereafter."

It is true that defendants' employees are entitled to compensated time off for illness; however, that amount of compensated time is not banked, nor can it be calculated in six-month periods. Defendants' sickness absence policy provides that employees may be compensated for time off due to illness for up to five consecutive days and must seek alternate forms of compensation under short- or long-term disability programs if the illness or injury lasts for more than seven days. Thus, an employee's "current rate of entitlement" can be measured only in seven-day periods (in which an employee would be entitled to up to five days of compensated time off for illness), but cannot be

measured in six-month periods as section 233 requires. Accordingly, section 233 does not apply to sickness absence policies like defendants'.

Our conclusion that the Legislature did not intend section 233 to apply to a sickness absence policy like defendants' is supported by the Legislature's addition to the Labor Code of section 234, which prohibits employers from using an absence control policy to "count[] sick leave taken pursuant to Section 233 as an absence that may lead to or result in discipline, discharge, demotion, or suspension . . . ." As noted above, the only limitation on the amount of compensated time off an ill employee may claim under defendants' sickness absence policy is defendants' attendance management policy, which provides a schedule of progressive discipline if an employee is absent eight days or more in a year. Without this limitation, an ill employee could claim an unlimited number of compensated sick days, provided the employee returned to work for at least part of a day every week.

If section 233 required defendants to permit an employee to use a portion of this compensated time for kin care, section 234, by its terms, would prohibit defendants from using its attendance management policy to limit the amount of kin care that an employee could claim. Thus, rather than being entitled to use for kin care half of the amount of compensated time the employee could use as sick time, sections 233 and 234 together would permit an employee to claim as kin care far more compensated time off than the employee would be entitled to claim if personally ill. Such a result would be contrary to the plain intent of section 233, which requires only those employers who provide sick leave in accrued increments to permit employees to use half of that annually accrued amount for kin care.

In an effort to avoid this obviously problematic conclusion, the Court of Appeal reasoned, and plaintiffs suggest in the alternative, that an employee's kin care leave entitlement could be based on the amount of sick leave that the employee actually utilizes in one year. The Court of Appeal acknowledged the flaw with this reasoning, explaining that "one cannot in advance calculate with mathematical certainty the amount of sick leave that employees would actually use in a six month period because of the uncertainty of their illness or injury. However, section 233 does not require any such certainty." Not so.

Section 233 expressly sets forth a minimum amount of kin care leave that covered employers must provide to employees—"an amount not less than the sick leave that would be accrued during six months at the employee's then current rate of entitlement." (§ 233, subd. (a).) The Legislature endeavored to provide employers with guidelines to ascertain, with precision, an employee's kin care leave entitlement. An interpretation of the statute that renders impossible an accurate calculation of an employee's kin care leave

entitlement is illogical and contrary to the Legislature's clear intent. Plaintiffs suggest that an employer's ability to ascertain the amount of kin care leave to which its employees are entitled "is not necessary to . . . find that the plan falls within the statutory definition." This reasoning is flawed. The plain language of the statute requires that the amount of accrued and available kin care leave "in any calendar year" be ascertainable in relation to the amount of sick leave that is accrued in any six-month period. (§ 233, subd. (a).) Plaintiffs' argument—that there are multiple ways to calculate an employee's kin care leave entitlement under a sickness absence policy like defendants'—is self-defeating. Because the Legislature intended to put employers and employees on notice of the minimum amount of kin care leave to which an employee is entitled, an interpretation of section 233 that permits different calculations based upon the same sickness absence policy cannot be correct.

In addition to requiring that the amount of kin care leave be ascertainable, the statute further limits the type of sick leave plans to which it applies, explaining that sick leave means "accrued increments of compensated leave," and employees may only use a measurable portion of "accrued and available" sick leave for kin care. (§ 233, subds. (b)(4), (a).) It is in these two portions of the statute that the definition of "accrued" becomes critical.

Defendants argue that "by far the most common definition of 'accrued' is 'to accumulate over time,' or words to that effect." Our research yields a similar conclusion.[5] Plaintiffs disagree with defendants' proffered definition—that accrued means "to accumulate over time"—contending that a temporal element is not essential to a plain and commonsense understanding of the phrase. Once the temporal element of the definition is excised, both parties agree that "accrued" means, in essence, "accumulated." Indeed, plaintiffs contend that the definition of "accrued" when used in the context of compensated leave "is most closely akin to that indicated in Black's Law Dictionary, something which is 'earned but not yet' due or paid."

■ Applying this definition of "accrued" here, we conclude that defendants' sickness absence policy is not governed by section 233. The parties stipulated that "employees do not earn, vest or accrue any particular number

---

[5] (See American Heritage Dict. (4th ed. 2000) p. 12 [defining "accrue" as "[t]o accumulate over time"]; Black's Law Dict. (8th ed. 2004) p. 22 [defining "accrue" as "[t]o accumulate periodically"]; Merriam-Webster's Collegiate Dict. (11th ed. 2004) p. 9 [defining "accrue" as "to accumulate or be added periodically"]; 1 Oxford English Dict. (2d ed. 1989) p. 90 [defining "accrued" as "[a]ccumulated by growth"]; Random House Webster's Unabridged Dict. (2d ed. 2001) p. 13 [defining "accrue" as "to happen or result as a natural growth, addition, etc."]; Webster's 3d New Internat. Dict. (2002) p. 13 [defining "accrue" as "to be periodically accumulated in the process of time whether as an increase or a decrease"]; World Book Dict. (1991) p. 15 [defining "accrue" as "to grow or arise as the product of money invested."].)

of paid sick days in a year under Section 5.01F." "Under [defendants'] system of sickness absence payments, employees do not have a 'bank' of paid sick days that they accrue in increments over a period of time." In other words, defendants' policy is not an accumulation policy. Under defendants' policy, there are simply no "earned but not yet due or paid" sick days.

Plaintiffs strain to define the terms of section 233 to encompass defendants' policy, arguing that the definition of the term "accrued" changes based upon how it is used in different portions of the statute. We see no reason to reach this unusual conclusion. "Accrued" means "accumulated" each time it is used in the statute. "Accrued" first appears in section 233 in the statute's opening sentence, explaining that employers must allow employees to use "accrued and available sick leave" to care for an ill relative. (§ 233, subd. (a).) Plaintiffs argue that the Court of Appeal correctly suggested that the term "accrued" in this portion of the statute means to "come into existence as [an] enforceable claim[]." By so defining the term, plaintiffs argue that defendants' policy—which provides employees with a vested right to use compensated sick leave after a one-year period of employment is completed—is governed by section 233.

The appeal of according the term "accrued" this definition is not lost on the court. Indeed, in some legal contexts, the term "accrue" means to "come into existence as an enforceable claim or right; to arise." (Black's Law Dict., *supra*, at p. 22; see also Random House Webster's Unabridged Dict., *supra*, at p. 13 [defining "accrue" as "to become a present and enforceable right or demand"]; American Heritage Dict., *supra*, at p. 12 [same]; Webster's 3d New Internat. Dict., *supra*, at p. 13 [same].) Black's Law Dictionary explains, " 'The term "accrue" *in the context of a cause of action* means to arrive, to commence, to come into existence, or to become a present enforceable demand or right.' " (Black's Law Dict., *supra*, at p. 22, italics added, citing Schwing, Cal. Affirmative Defenses (2d ed. 1996) § 25:3, pp. 17–18.) Although the term "accrue" can be used to indicate that a cause of action has come into existence, section 233 has nothing to do with causes of action. According the term "accrued" another of its ordinary definitions— "accumulated"—makes considerably more sense in the context of section 233.[6]

---

[6] Brian Garner's A Dictionary of Modern Legal Usage (2d ed. 1995), explains that "[a]t least two critics have recommended that this word ['accrue'] be restricted to monetary contexts, quite unaware of its most common meaning in legal contexts. Interest *accrues*, we may be certain, but so do causes of action . . . ." (*Id.* at p. 16.) We do not suggest that the term's definition with respect to causes of action is in any way altered; instead, in this limited context of sick leave, we suggest that the term is better defined in connection with measurable or ascertainable amounts.

Further, plaintiffs' proposed definition of "accrued" as a vested or present right is improper because it conflates the term "accrued" with the term "available," both of which are used in section 233. "Available" is defined as "present and ready for use." (American Heritage Dict., *supra*, at p. 123; see also 1 Oxford English Dict., *supra*, at p. 812 ["available" defined as "capable of being made use of, at one's disposal, within one's reach"]; Webster's 3d New Internat. Dict., *supra*, at p. 150 ["available" defined as "capable of use for the accomplishment of a purpose"].) Because the statute defines the type of sick leave that may be used for kin care as both "accrued and available" leave, it is clear that the Legislature intended the terms to have distinct meanings. Defining "accrued" as a vested or present right thwarts that intent, rendering the term "available" redundant. As we have stated, "[a] construction making some words surplusage is to be avoided." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1387.) Accordingly, we cannot agree with the suggestion that "accrued" as used in section 233 means a present, vested right, or—put another way—available.

The final use of "accrued" appears in section 233's definition of sick leave, defined as "accrued increments of compensated leave." (§ 233, subd. (b)(4).) The Court of Appeal suggested that the terms "accrued" and "increments" in this phrase are nearly synonymous. We cannot agree; if the terms were to be read identically, or nearly so, the word "increments" would be unnecessary, an interpretation we do not believe the Legislature intended. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.*, *supra*, 43 Cal.3d at p. 1387.) Plaintiffs again argue that "accrued" means to "come into existence as [an] enforceable claim[]," when used in the phrase "accrued increments." We reject this argument for the same reason mentioned above—although the term "accrued" has a particular meaning in the context of a cause of action, there is nothing in section 233 to suggest that the term "accrued" takes on that meaning here. Instead, by according the term "accrued" a commonsense meaning of "accumulated," the conclusion that section 233 applies only to accrual-based sick leave policies, not uncapped sickness absence policies, is plain.

To avoid this conclusion, plaintiffs urge this court not to focus "on the debate over the meaning of 'accrue,' " but ask instead that we "analyze the 'intent' of section 233." By focusing on the language of section 233, we do both. Section 233 applies to employers who provide sick leave, defined by the statute as "accrued increments of compensated leave." The fact that the statute includes a definition of "sick leave" suggests that the Legislature understood the term is susceptible of multiple meanings, and endeavored to clarify precisely which types of sick leave policies are covered by the statute. Some policies, by implication, are not within the statute's reach. Had the Legislature intended that every type of sickness absence or sick leave policy be governed by section 233, it could have stated so expressly, or could have

declined to provide a limiting definition of the phrase "sick leave" in the statute, arguably broadening the statute's reach.

Although the plain language of the statute is clear, an examination of section 233's legislative history confirms that the statute was not intended to broadly apply to all types of sick leave policies. Instead, the statute applies only to those policies in which employers provide "accrued increments of compensated leave." (§ 233, subd. (b)(4).) The Legislature understood that this was a limiting definition; indeed, in describing the bill's purpose, the Legislative Counsel explained that "[t]his bill would require an employer who provides sick leave, *as defined*, for employees to permit an employee to use . . . accrued sick leave" to care for ill relatives. (Legis. Counsel's Dig., Assem. Bill No. 109 (1999–2000 Reg. Sess.), italics added.) The legislative history is replete with references to limiting the types of sick leave at which the statute is aimed; the phrase "sick leave, as defined" is oft repeated in analyses of the bill. (See, e.g., Legis. Counsel's Dig., Assem. Bill No. 109 (1999–2000 Reg. Sess.) as amended June 21, 1999; Assem. Com. on Appropriations, Analysis of Assem. Bill No. 109 (1999–2000 Reg. Sess.) for hearing Apr. 28, 1999; Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 109 (1999–2000 Reg. Sess.) for hearing Apr. 7, 1999, p. 1 [bill "[d]efines 'sick leave' to mean accrued increments of compensated leave"].)

Assembly Bill No. 109's history confirms that the definition of sick leave codified in section 233 was intentionally limited. Prior to the passage of Assembly Bill No. 109 in 1999, Assemblymember Knox introduced a similar bill in the 1997–1998 Regular Session, Assembly Bill No. 480, which failed to pass out of the Senate. As introduced, Assembly Bill No. 480 defined "sick leave" as "payment by an employer of the normal compensation of an employee, out of the general assets of the employer, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties or is otherwise absent for medical reasons." (Assem. Bill No. 480 (1997–1998 Reg. Sess.) as introduced Feb. 24, 1997.) The bill was amended four times before it failed to pass, and the third amendment altered the original definition of "sick leave" to the language currently in section 233. (Assem. Bill No. 480 (1997–1998 Reg. Sess.) as amended Sept. 5, 1997.) If the definition of "sick leave" contained in Assembly Bill No. 480 had not changed to its current definition, defendants' sickness absence policy likely would have been covered by section 233.

■ While we conclude that the Legislature intended to limit the types of sick leave policies to which the statute applies, we conclude that it also intended, as plaintiffs suggest, to protect employees. Interpreting the statute to exclude policies like defendants' does not run afoul of the legislative intent.

Employers are not required to provide sick leave. Many employers elect to do so, and many do so in the form of an accrual-based system. Employers may choose to refuse employees the right to use uncapped sick leave to care for relatives, although employers are certainly not precluded from permitting such use. Indeed, defendants offer compensated personal days off, which may be taken to care for ill relatives—a policy of which plaintiff Huerta availed himself to receive one day of compensated leave to care for his ill mother. There are employers, like defendants, that elect to provide an uncapped compensated sick leave policy. We conclude that section 233 does not apply to those types of policies.

## Conclusion

We reverse the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Chin, J., Corrigan, J., and O'Rourke, J.,[*] concurred.

---

[*]Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.