[Nos. A134995, A137530. First Dist., Div. Three. Feb. 9, 2015.]

THE PEOPLE, Plaintiff and Respondent, v.
JULIUS W. LEWIS, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.C., II.D., and II.E.

[redacted]

## COUNSEL

John Wilder Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant, Attorney General, Gerald A. Engler, Assistant Attorney General, Rene A. Chacon and Linda M. Murphy, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIGGINS, J.**—Defendant Julius W. Lewis was convicted by a jury of five counts of lewd and lascivious acts on a child (Pen. Code, § 288, subd. (a)),

and was sentenced to 29 years to life in prison.[1] One count involved conduct with Angelina B. in 2006 or 2007, and the other four involved conduct with Teresa C. in August, September, and October of 1989. Lewis was ordered to pay over $1.5 million in victim restitution to Angelina and Teresa. He disputes the convictions and the restitution awards.

We affirm the convictions. Lewis argues that the convictions as to Teresa must be reversed because they were barred by the statute of limitations, or because his right to due process was violated due to the delayed prosecution. In the published portion of this opinion, we reject these arguments.

In the unpublished portion of this opinion, we reject Lewis's argument that the conviction as to Angelina must be reversed because the court erred when it excluded evidence that allegedly concerned her credibility. We also explain the reasons for our conclusions with respect to Lewis's arguments concerning restitution to the victims.

## I. BACKGROUND

### A. *Angelina*

In October 2005, when Angelina B. was five years old, she was placed in foster care with Lewis's friend, Lynett Palmer. Palmer had four or five other foster children in her home. Lewis was living nearby with his wife, his daughters Monica and Melissa, and his sons, J.L. and N.L. Angelina went to Lewis's home to play with his daughters, and Palmer left Angelina with Lewis when she ran errands and went to school and church.

Angelina testified that, on about four or five occasions, Lewis asked her to come into his bedroom, took off her pants, and started "humping" her, leaving "white stuff" on the bed. He also sucked on her breasts. In August 2007, Angelina told Palmer what Lewis had done. Palmer noticed a "small speckled circle" on Angelina's left breast, and reported Angelina's allegation to a foster care worker. In a 2007 forensic interview, Angelina said that Lewis put his private part in her private part.

### B. *Teresa*

After Angelina disclosed her abuse, San Francisco police located Lewis's ex-wife in Texas, who reported that he had molested her daughter, Teresa C. Teresa was born in 1978, and lived in Texas until June or July of 1989, when she moved to San Francisco with her mother and Lewis. Teresa testified that

---

[1] Unless otherwise indicated, statutory references are to the Penal Code.

Lewis began touching her breasts and between her legs when she was six or seven years old. When she was eight or nine, he began having sexual intercourse with her, progressing from once a month to a couple of times a week. He continued sexually abusing her one to three times a week in San Francisco in August, September, and October of 1989. She remembered that he had sexual intercourse with her on October 17, 1989, the day of the Loma Prieta earthquake.

After the earthquake they returned to Texas, where Lewis continued to molest her. In the last incident, when she was between 11 and 13 years old, he put a knife to her throat and raped her. She did not recall a medical examination in July of 1991 when she tested positive for gonorrhea, and did not remember testifying before a Texas grand jury.

## C.   *Other Victims*

L.W., born in 1978, testified that Lewis sexually abused her from the time she was three until age eight or nine. Lewis babysat her, and her family lived with his family for about a year. When she was three, he touched her vagina and had her touch his penis. When she was four, he digitally penetrated her vagina. When she was five, he began having intercourse with her. When she was seven, he began making her orally copulate him.

When Lewis learned that L.W. had told Teresa that she was going to report what he was doing, he twisted L.W.'s arm behind her back, put a gun to her head, and threatened to kill her and her mother if she told anyone what was happening. L.W. witnessed Lewis have intercourse with Teresa, and saw him try to penetrate another girl named Sabrina with his penis.

Sabrina A., born in 1977, testified that she was molested by Lewis when she was seven and eight years old. When her mother worked late, Sabrina stayed overnight at L.W.'s home, where Lewis was living. Lewis touched her vagina and made her touch his penis five or six times over a three-month period. He once tried, in L.W.'s presence, to penetrate Sabrina's vagina with his penis. A couple of days later Sabrina told her mother that Lewis had molested her and L.W.

L.C., born in 1972, was Lewis's stepsister. L.C. testified that Lewis often forced her to have intercourse when he was age 19 or 20 and she was age nine. She eventually reported the abuse at school.

## II. DISCUSSION

A. *Statute of Limitations (Teresa)*

Lewis contends that the court incorrectly instructed the jury on the statute of limitations applicable to the charges involving Teresa.

█ The statute of limitations for lewd and lascivious acts upon a minor under section 288 is six years. (§ 800.) Effective January 1, 1994, former section 803, subdivision (g)(1) provided that if the limitation period specified in section 800 had expired, "a criminal complaint may be filed within one year of the date of a report to *a law enforcement agency* by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section . . . 288 . . . ." (Stats. 1993, ch. 390, §1, pp. 2224, 2226, italics added.) In 1997, section 803, subdivision (g)(1) was amended to allow the filing of a complaint by such a victim within one year of a report to "a *California* law enforcement agency." (Stats. 1997, ch. 29, § 1, pp. 344, 346, italics added.) The 1997 language is currently in section 803, subdivision (f)(1). (Stats. 2005, ch. 479, § 3, pp. 3790, 3792.)

Lewis argues that he had evidence to support a finding that Teresa reported his California crimes to a Texas law enforcement agency in 1991, and that her report in Texas qualified as a report within the meaning of the 1994 version of section 803, subdivision (g)(1), because that version, unlike the one enacted in 1997, did not expressly require that the report be made to a *California* law enforcement agency.

Lewis presented evidence to the court that Teresa told a Texas physician in July 1991 that he had raped her the previous month, and that in September 1991 he was indicted by a Texas grand jury for raping her on or about June 22, 1991. The charge was dismissed in 1992 when the prosecution lost contact with Teresa, and no other records concerning the charge were preserved. Although he was indicted in Texas only for a single count of rape, Lewis postulates that Teresa might have reported other abuse in addition to the rape, including his molestations of her while they lived in California in 1989. Lewis maintains that he should have been able to argue this point to the jury, and that if the jury found his California crimes were reported to Texas law enforcement in 1991, then prosecution for those crimes would have been barred by the statute of limitations.

█ The People argue that it would be entirely speculative to infer from the evidence Lewis cites that Teresa told Texas law enforcement about her molestations in California. For purposes of this opinion, we will assume that the evidence was sufficient to support such an inference, and that Lewis's

offenses against Teresa could have been found to be time-barred if his interpretation of the statute is correct. An operative report to law enforcement in 1991, long before the running of the six-year statute, would not have extended the 1995 deadline for prosecution of the 1989 crimes. "The effect of subdivision (g) is to permit prosecution of sexual offenses with a juvenile victim within six years of the offense or one year of the victim's report of the offense, whichever is later." (*People v. Vasquez* (2004) 118 Cal.App.4th 501, 505 [13 Cal.Rptr.3d 162], fn. omitted [interpreting the 1997 version of § 803, subd. (g)(1)].) If the statute of limitations expired in 1995, the deadline could not thereafter be extended without violating the prohibition against ex post facto laws. (*Stogner v. California* (2003) 539 U.S. 607, 609 [156 L.Ed.2d 544, 123 S.Ct. 2446] [the ex post facto prohibition precludes resurrection of prosecutions that are time-barred when the new law is enacted].)

The People argue that the 1997 amendment to section 803, subdivision (g)(1) expressly requiring a report to a "California" law enforcement agency did not change the law as Lewis claims, but merely clarified it. If the 1997 amendment simply clarified the 1994 law, then it could be applied without violating the ex post facto prohibition, and a Texas report would not have triggered the running of the statute's one-year period, even under the 1994 version. (See *Weaver v. Graham* (1981) 450 U.S. 24, 29 [67 L.Ed.2d 17, 101 S.Ct. 960] [to be ex post facto a criminal law must be retrospective]; *Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243 [62 Cal.Rptr.2d 243, 933 P.2d 507] [a statute that clarifies existing law does not operate retrospectively].)

The People also argue Lewis's interpretation of the 1997 amendment is "implausible." As the People put it in their brief: "According to appellant's construction, the Legislature in 1994 *intended* to start the statute of limitations running upon a report to law enforcement in *any* other state or country, and *intended* to impose an impossible duty on the local district attorneys to find, within one year, any national or international sexual assault reports that might have been made. Appellant's construction would also mean that the Legislature decided in 1997 that it no longer wanted to impose such a burden on local jurisdictions and modified the law accordingly."

■ The issue was litigated at trial and the court agreed with the People. The testimony showed that Teresa reported her molestation in California to the San Francisco police on September 27, 2007. The complaint against Lewis was filed on December 3, 2007, within one year of Teresa's report. The jury was instructed: "If you find . . . the defendant guilty of any of the counts [involving Teresa] . . . , you must further determine as to each count . . . whether the People have proved all [of] the following by a preponderance of the evidence: [¶] One, on September 27, 2007, Teresa C. first reported to a

California law enforcement agency that while under the age of 18, she was the victim of lewd and lascivious acts upon a minor under 14; [¶] Two, a complaint accusing the defendant of the crimes [against Teresa] was filed on or before September 27, 2008. . . ."

■ The accuracy of the court's instruction is a question of statutory interpretation that we review de novo. (*People v. Sisuphan* (2010) 181 Cal.App.4th 800, 806 [104 Cal.Rptr.3d 654].) "In construing a statute, '[t]he fundamental rule is that a court "should ascertain the intent of the Legislature so as to effectuate the purpose of the law." ' " (*Ibid.*) ■ According to the legislative history, section 803, subdivision (g)(1) was enacted in 1994 out of concern that " '[c]hild sexual abuse cases frequently come to the attention of law enforcement wherein the victim, now an adult reveals that [he or she] had been sexually abused as a child. . . . However, due to the statute of limitations, a case of this sort cannot be pursued in criminal court unless the crime was committed within six years of the disclosure.' " (*Ream v. Superior Court* (1996) 48 Cal.App.4th 1812, 1820–1821 [56 Cal.Rptr.2d 550].) This legislative intent to effectively extend the statute of limitations in child molestation cases would not be furthered by a literal interpretation of the 1994 statute because California law enforcement authorities may never learn of, and be able to act on, reports by victims to law enforcement in other jurisdictions. We therefore independently agree with the trial court's construction of the statute.

■ Lewis notes that the 1994 version of section 803, subdivision (g)(1) is unambiguous and that, when a statute's language is clear, the plain meaning ordinarily controls. (*People v. Sisuphan, supra*, 181 Cal.App.4th at p. 806.) He further observes that statutory amendments are ordinarily considered to change the meaning of the law. (*Hatch v. Superior Court* (2000) 80 Cal.App.4th 170, 226 [94 Cal.Rptr.2d 453].) In this instance, however, those rules of construction must yield to the more fundamental rule requiring that statutes receive a reasonable, practical construction consistent with their apparent purpose. (See *People v. Zambia* (2011) 51 Cal.4th 965, 972 [127 Cal.Rptr.3d 662, 254 P.3d 965]; see also *People v. Robertson* (2003) 113 Cal.App.4th 389, 393 [6 Cal.Rptr.3d 363] [" '[w]hile an intention to change the law is usually inferred from a material change in the language of the statute [citations], a consideration of the surrounding circumstances may indicate, on the other hand, that the amendment was merely the result of a legislative attempt to clarify the true meaning of the statute' "].) The People's critique of Lewis's argument is entirely persuasive.

Additional support for our conclusion appears in the 1994 version of section 803. Subdivision (f) stated: "Notwithstanding any other limitation of time described in this section, a criminal complaint may be filed within one year of

the date of a report to a *responsible adult or agency* by a child under 18 years of age that the child is a victim of a crime described in Section . . . 288 . . . . [¶] For purposes of this subdivision, a 'responsible adult' or 'agency' means a person or agency required to report pursuant to Section 11166. . . ." (Stats. 1993, ch. 390, § 1, pp. 2224, 2225, italics added.) The cross-reference to mandated reporters who come within section 11166 in the second quoted paragraph makes it clear that the words "responsible adult or agency" in the first paragraph meant a "responsible *California* adult or agency," because California has no authority to mandate reports by adults or agencies in other states. (See *Bonaparte v. Tax Court* (1881) 104 U.S. 592, 594 [26 L.Ed. 845] ["[n]o state can legislate except with reference to its own jurisdiction"]; *Bigelow v. Virginia* (1975) 421 U.S. 809, 824 [44 L.Ed.2d 600, 95 S.Ct. 2222] [a state does not have "power or supervision over the internal affairs of another state"].) The modifier "California" was implicit in former section 803, subdivision (g)'s reference to "law enforcement agency," just as it was implicit in the reference to "responsible . . . agency" in the first paragraph of former section 803, subdivision (f), because subdivision (g), like subdivision (f), was likely referring to agencies under California jurisdiction. (See *McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110 [105 Cal.Rptr.3d 404, 225 P.3d 538] [the words in a statute " 'must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible' "].)

The legislative history lodged in the trial court of the 1997 amendment to section 803, subdivision (g)(1) further supports our conclusion. Addition of the word "California" in subdivision (g)(1) was not discussed, indicating that the change was not considered material. (See, e.g., Sen. Com. on Public Safety, Analysis of Assem. Bill No. 700 (1997–1998 Reg. Sess.) as amended June 3, 1997.)

For these reasons, we conclude that the jury was correctly instructed on the statute of limitations.

### B. *Denial of Due Process (Teresa)*

Lewis moved in the trial court to dismiss the charges involving Teresa, arguing that the lapse of time between the crimes and the filing of the complaint deprived him of due process. The court denied the motion on the ground that any delay was not caused by any state action. Lewis maintains that the court erred in denying the motion, and that we must independently review the ruling because it was based on the wrong legal standard.

■ "Delay in prosecution that occurs before the accused is arrested or the complaint is filed may constitute a denial of the right to a fair trial and to due

process of law under the state and federal constitutions. A defendant seeking to dismiss a charge on this ground must demonstrate prejudice arising from the delay. The prosecution may offer justification for the delay, and the court considering a motion to dismiss balances the harm to the defendant against the justification for the delay." (*People v. Catlin* (2001) 26 Cal.4th 81, 107 [109 Cal.Rptr.2d 31, 26 P.3d 357].) "Even a minimal showing of prejudice may require dismissal if the proffered justification for delay is insubstantial. By the same token, the more reasonable the delay, the more prejudice the defense would have to show to require dismissal." (*People v. Dunn-Gonzalez* (1996) 47 Cal.App.4th 899, 915 [55 Cal.Rptr.2d 404].)

We will assume for purposes of our analysis that due process can be denied by a delayed prosecution even if the state is not responsible for the delay, that the court thus applied the wrong standard when it denied the motion to dismiss, and that this error requires us to review the ruling on the motion de novo. Exercising that review, we conclude there was no deprivation of due process. The delay in this case was fully justified. The 1989 crimes were not reported to California law enforcement until 2007, and the prosecution was initiated promptly after the report was made. Consequently, a very strong showing of prejudice was required (*People v. Dunn-Gonzalez, supra*, 47 Cal.App.4th at p. 915), and Lewis has not made one.

Lewis argues that he was prejudiced by the loss of the child welfare agency, police, prosecution, and court records of his 1991 Texas indictment and related investigation because those records "would plausibly have shown that the statute of limitations had expired." However, as we have explained, Lewis would not have been assisted by records showing that Teresa reported the abuse she suffered in California to Texas law enforcement in 1991 because a report to California authorities was required to trigger the running of the statute of limitations in section 803.

Lewis argues in his reply brief that the lost records might have contained information he could have used to impeach Teresa's testimony about the molestations she suffered in Texas. He notes that "[d]espite Teresa describing years of abuse in Texas from the witness stand, the Texas grand jury indictment against [him] contained only one charge: a single count of penetration." He continues: "Had the Texas grand jury heard a story remotely similar to the one heard by [his] California jury, [he] would have been charged with more than a single Texas crime. [¶] Likewise, were the transcripts for the Texas grand jury and the Texas police reports still in existence, [he] would have most likely been able to undermine Teresa's credibility with the discrepancies between the different versions of her story." He argues that he was prejudiced because "Teresa's credibility as a witness depended on the jury believing her entire story. Being able to discredit the

Texas part of her testimony would have also caused the jury to doubt the San Francisco part of her testimony."

■ The problem with this line of argument is that it is wholly speculative. Our Supreme Court has repeatedly found speculative arguments inadequate to establish the actual prejudice required for delayed prosecution to constitute a due process violation. (*People v. Jones* (2013) 57 Cal.4th 899, 923 [161 Cal.Rptr.3d 295, 306 P.3d 1136]; *People v. Abel* (2012) 53 Cal.4th 891, 909 [138 Cal.Rptr.3d 547, 271 P.3d 1040]; *People v. Alexander* (2010) 49 Cal.4th 846, 875–876 [113 Cal.Rptr.3d 190, 235 P.3d 873].) Since the delay in prosecution was completely justified and the possible prejudice was entirely speculative, the justification for delay outweighed the possible harm and the motion to dismiss for deprivation of due process was correctly denied.

C.–E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## III. DISPOSITION

Lewis's convictions are affirmed. The amount awarded in the order for restitution to Teresa is reduced to $10,000, and the order is affirmed as so modified. The order for restitution to Angelina is reversed, and the case is remanded for a new hearing on the amount of restitution to which she is entitled.

McGuiness, P. J., and Pollak, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 13, 2015, S225166.

---

*See footnote, *ante*, page 203.