Filed 4/14/16  P. v. Rosses CA4/1

### NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D066065 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD244467) |
| FABIAN LAMAR ROSSES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Charles G. Rogers, Judge.  Affirmed.

Ronda G. Norris, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Randall A. Einhorn and Quisteen S. Shum, for Plaintiff and Respondent.

INTRODUCTION AND BACKGROUND

A jury found Fabian Lamar Rosses guilty of three counts of sexual penetration of a child 10 years old or younger (Pen. Code § 288.7, subd. (b); counts 1-3)[1] and two counts of lewd act upon a child under the age of 14 (§ 288, subd. (a); counts 4 & 5).  Rosses committed the offense in count 5 against one minor (victim 1) and the offenses in counts 1 through 4 against another minor (victim 2).  The jury also found true multiple victim enhancement allegations attached to each count.  (§ 667.61, subds. (b), (c), (e)(4).)  The court sentenced Rosses to five concurrent terms of 15 years to life, one each for counts 1 through 5.

Both before and after the trial, Rosses unsuccessfully moved to dismiss count 5 and the multiple victim enhancement allegations.  Rosses contends on appeal the trial court's failure to dismiss count 5 and the multiple victim enhancement allegations violated his rights to due process and a fair trial.  We disagree and affirm the judgment.

A

Rosses was close friends with a family member of victim 1, so victim 1 knew him well.  When victim 1 was 10 years old he entered Rosses's bedroom, awoke Rosses, and asked if he could play with Rosses's game console.  Rosses agreed and victim 1 lay down on Rosses's bed to play the video game.  Rosses began "playing footsie" with victim 1, rubbed the back of his thigh, and grabbed his butt.  Rosses then grabbed victim 1's penis

---

[1]    Unless otherwise noted, all further statutory references are to the Penal Code.

and began rubbing it.  Victim 1 moved and asked Rosses to stop.  Rosses asked if he could rub victim 1's penis again and victim 1 shook his head no.

Later that evening, victim 1 reported the incident to his mother, who called the police.  A San Diego police officer responded to the call and interviewed victim 1, victim 1's mother, and, separately, Rosses.  The officer prepared a report and forwarded it to police Detective Donna Williams.  Detective Williams interviewed victim 1's mother, Rosses, Rosses's girlfriend, and victim 1's stepfather.  Detective Williams audio recorded her interviews.  The next month a forensic interviewer conducted a videotaped interview of victim 1.

Detective Williams submitted the case to the district attorney's office, which rejected the charges.  Detective Williams passed away approximately six years later.

B

Approximately seven years after the incident with victim 1, Rosses molested a 10-year-old girl, victim 2.  Rosses digitally penetrated victim 2's vagina three separate times on one occasion and, on a separate occasion, grabbed her vagina and buttocks.[2]

C

The People filed a complaint against Rosses, originally charging him only with the crimes involving victim 2.  Within a few months of filing the original complaint, the

---

[2]     We omit further details about these offenses from our summary to preserve the confidentiality of victim 2's identity and because the details are not relevant to the issues raised on appeal.

3

People amended the complaint to add count 5 for the crime against victim 1 and the multiple victim enhancement allegations.

Rosses moved to dismiss the added charge and allegations, arguing the People's delay in bringing them violated his due process rights. The People opposed the motion with a declaration stating in part: (1) Detective Williams submitted the case but the prosecutor rejected the charges; (2) Rosses denied the molestation to several witnesses and to Detective Williams, there were no percipient witnesses, and the only evidence of molestation when Detective Williams submitted the case came from victim 1's statements; and (3) the prosecution provided all 911 calls, field interview reports, forensic interviews, audio recorded follow-up interviews, and reports of interviews related to victim 1 to Rosses's counsel. The court deferred ruling on the motion until after the trial.

At trial, a San Diego police detective testified as to the contents of Detective Williams's reports. Defense counsel used Detective William's reports and the video of the forensic interview of victim 1 to point out discrepancies in the testimony of victim 1's stepfather and victim 1, respectively. The jury convicted Rosses on all counts and found true the multiple victim enhancement allegations.

Before sentencing, the court heard argument on the deferred motion to dismiss. After considering the parties' submissions on the issues and evidence admitted at trial, the court found the delay in charging Rosses with the additional count related to victim 1 did not result in substantial prejudice to Rosses and was not negligent or undertaken to gain an advantage. The court therefore denied the motion to dismiss.

4

DISCUSSION

### I. *Guiding Principles and Standard of Review*

Although a delay in charging a criminal defendant does not implicate the right to a speedy trial, it may violate the right to a fair trial or to due process of law under the state and federal Constitutions. (*People v. Cowan* (2010) 50 Cal.4th 401, 430 (*Cowan*).) Thus, a defendant may seek to dismiss a charge based on a delay in prosecution that occurred before his arrest based on a showing of actual prejudice arising from the delay, such as from the loss of a material witness or the fading memories of witnesses. (*Ibid.*; see *People v. Abel* (2012) 53 Cal.4th 891, 908 [recognizing a claim of faded memory is speculative unless the defendant makes an affirmative showing of actual prejudice as a result]; *People v. Hartman* (1985) 170 Cal.App.3d 572, 579 (*Hartman*) [recognizing a defendant must show actual prejudice based on the facts of the case].)

In ruling on such a motion to dismiss, the court must balance the harm to the defendant against the prosecution's justification for the delay. (*People v. Nelson* (2008) 43 Cal.4th 1242, 1250 (*Nelson*); *People v. Mirenda* (2009) 174 Cal.App.4th 1313, 1327 (*Mirenda*).) Thus, "a minimal showing of prejudice may require dismissal if the proffered justification for delay is insubstantial. By the same token, the more reasonable the delay, the more prejudice the defense would have to show to require dismissal." (*People v. Dunn-Gonzalez* (1996) 47 Cal.App.4th 899, 915 (*Dunn-Gonzalez*).) Whether the defendant was actually prejudiced and whether the delay was justified are questions of fact. (*Mirenda*, *supra*, at p. 1330; *Dunn-Gonzalez*, *supra*, at pp. 911-912.) We review

the trial court's ruling for abuse of discretion, deferring to any factual findings of the court supported by substantial evidence.  (*Cowan*, *supra*, 50 Cal.4th at p. 431.)

## II.  *No Prejudice Resulting from Pre-Accusation Delay*

Rosses asserts the delay in charging him with respect to victim 1 prejudiced him due to:  (1) an increase in his potential sentence from the multiple special victim enhancement allegations; (2) the unavailability of Detective Williams to testify at trial; (3) the faded memories of witnesses, specifically victim 1 and victim 1's stepfather; (4) the prosecutor's use of evidence related to victim 1 to bolster the counts related to victim 2; and (5) the prosecutor's use of the delay to bolster the credibility of victim 1.  We do not agree.

## A

First, Rosses did not establish actual prejudice due to an increase in his potential sentence from the multiple victim enhancement allegations.  Counts 1 through 5, along with the special allegations, exposed him to a potential sentence of five consecutive terms of 15 years to life, totaling 75 years to life.  Had the prosecutor charged Rosses with the crime against victim 1 in an earlier, separate case, Rosses's potential sentence would have been eight years as opposed to 15 years to life on that charge.  However, if he had been convicted in that case, his potential sentence for counts 1 through 4 in the present case would have increased to four consecutive terms of 25 years to life, totaling 100 years to life.  (See § 667.61, subds. (a), (c)(8), & (d)(1).)  Therefore, the delay in charging him actually reduced, not increased, his total potential sentence.  Rosses contends he may not have been convicted of the count relating to victim 1 had he been tried closer to the time

6

of the act or, if he had been convicted, he may not have committed the crimes against victim 2. These contentions are speculative and insufficient to establish prejudice. (See *People v. Lewis* (2015) 234 Cal.App.4th 203, 213.) Further, the potential sentence increase from the addition of count 5 did not result from a change in law (see Historical and Statutory Notes, 49 West's Ann. Pen. Code (2010 ed.) foll. § 667.6, pp. 399-402), but instead from Rosses's own continued criminal activity. In the end, the trial court sentenced Rosses to five concurrent, not consecutive, terms of 15 years to life.

B

Second, Rosses did not show actual prejudice as a result of either faded memories or the loss of Detective Williams as a witness. The loss of a material witness or the fading memory of witnesses may cause prejudice. (*People v. Morris* (1988) 46 Cal. 3d 1, 37, disapproved on other grounds in *In re Sassounian* (1995) 9 Cal.4th 535, 543-544.) However, " '[t]he statute of limitations is usually considered the primary guarantee against bringing overly stale criminal charges.' " (*Nelson*, *supra*, 43 Cal.4th at pp. 1250-1251, quoting *People v. Archerd* (1970) 3 Cal.3d 615, 639.) Therefore, merely showing witness memories have faded, without more, is not sufficient to establish actual prejudice. (*Nelson,* at pp. 1251-1252.)

Rosses contends victim 1 changed the details of his testimony between the time of the incident and trial, but there is no evidence in the record any discrepancies in victim 1's story were due to the time delay or faded memory. An expert on how children disclose sexual abuse testified children tend to disclose incrementally, remembering more

7

as they talk more about the incident. Victim 1's story differed slightly even from the time of the preliminary hearing to the trial. Rosses had the opportunity to cross-examine victim 1 on any alleged discrepancies and the jury could consider them in evaluating victim 1's credibility. Although Rosses contends defense counsel could not impeach victim 1's trial testimony because he could not remember speaking with the police officer after the incident, defense counsel could have used the police reports. In addition, both the police officer and the forensic examiner were available for cross-examination regarding their respective interviews with victim 1. The jury saw the entire video of the forensic interview of victim 1, and defense counsel used the video of the forensic interview to impeach victim 1.

Rosses refers to arguments made at trial regarding victim 1's stepfather's inability to remember if he saw victim 1 in Rosses's room, but the stepfather's memory in this regard is irrelevant because Rosses admitted victim 1 was in his room on the day in question. Rosses also points out the stepfather could not recall speaking with the police officer, but the defense was able to effectively use Detective Williams's reports to impeach the stepfather on this point.

With respect to Detective Williams, the defense had all the records of Detective Williams's work on the case, including audio recordings of her interviews. The trial court considered the recordings of her interviews better evidence of the interviews than Detective Williams's recollection would have been and found the admission of otherwise inadmissible hearsay regarding the content of her reports mitigated any prejudice caused by her absence at trial. While Rosses contends the defense was somehow unable to

8

impeach victim 1's testimony as a result of Detective Williams's unavailability at trial, nothing in the record indicates Detective Williams ever interviewed victim 1.

C

Third, Rosses also did not show actual prejudice as a result of the prosecutor's use of evidence relating to victim 1 to bolster the case relating to victim 2 and the time gap to bolster victim 1's credibility.  Under Evidence Code section 1108, the trial court had discretion to admit evidence regarding Rosses's touching of victim 1 during the trial regarding Rosses's crimes against victim 2 under Evidence Code section 1108, regardless of whether or not charges related to victim 1 were before the jury.  (See *People v. Earle* (2009) 172 Cal.App.4th 372, 397 [explaining Evid. Code, § 1108 permits evidence of similar uncharged sex crimes to demonstrate the defendant's disposition to commit such crimes].) This obviates the impact of the nine-year delay as the prosecutor could have used evidence related to victim 1 to bolster the case with respect to victim 2 even absent the delay.

With respect to the prosecutor's use of the time gap to bolster victim 1's credibility, the trial court found the prosecutor's comments did not exceed the scope of counsel's entitlement to argue all inferences to be drawn from the evidence relevant to credibility. Both sides made arguments regarding credibility and the court noted "the inability to recall details works to some extent against both parties."  Finally, to the extent the later offenses with respect to victim 2 provided the jury with corroboration of Rosses's guilt with respect to victim 1, any prejudice is not the result of the delay, but is, instead, the result of Rosses's own continued criminal conduct.

9

Based on the foregoing, we conclude there is substantial evidence to support the trial court's finding there was no substantial prejudice as a result of the delay in charging Rosses with count 5.

### III. *Justification for Delay*

The record here does not clearly establish why charges were not originally filed against Rosses related to the incident with victim 1. Detective Williams submitted the case, but the charges were originally rejected, perhaps based on the absence of percipient witnesses and Rosses's consistent denials of any wrongdoing. Regardless, the prosecutor was under no obligation to file charges unless he or she was satisfied guilt was provable beyond a reasonable doubt. (*Cowan*, *supra*, 50 Cal.4th at p. 435; *Mirenda*, *supra*, 174 Cal.App.4th at p. 1329, quoting *People v. Boysen* (2007) 165 Cal.App.4th 761, 777.) We do not second-guess the prosecutor's decision whether to file charges. (See *Nelson*, *supra*, 43 Cal.4th at p. 1256.) The prosecutor filed the charge relating to victim 1 after victim 2 came forward specifically because victim 2's allegations convinced the prosecutor the case against Rosses with respect to victim 1 could be proved to a jury beyond a reasonable doubt. Although the prosecution may have used the time gap to bolster victim 1's credibility, the record as a whole does not support the conclusion the prosecution delayed filing charges related to victim 1 for the purpose of gaining a tactical advantage. Substantial evidence supports the court's finding the delay in this regard was neither negligent nor undertaken to gain an advantage.

In making the ruling, the trial court correctly explained "Section 1108 evidence is additional evidence. It is character evidence that the law has recognized is appropriate in

10

these kinds of cases."  Allegations of a second, similar crime may lend credibility to previous accusations, causing the prosecutor to feel confident in charging the defendant with respect to the earlier offense and may, therefore, provide justification for a preaccusation delay with respect to the earlier crime.  (See *People v. New* (2008) 163 Cal.App.4th 442, 466 (*New*) [32 year delay in charging defendant with wife's murder was reasonable based on finding there was not a prosecutable case regarding the original murder until third wife died in a similar manner][3]; see also *Nelson*, *supra*, 43 Cal.4th at pp. 1256-1257 [new evidence in the form of a cold hit on a fingerprint was justification outweighing any prejudice as a result of charges for a 1976 murder being brought in 2002]; *People v. Catlin* (2001) 26 Cal.4th 81, 109-110 [nine-year delay in murder charges justified where it would have been extremely difficult or impossible to make out a case against defendant until additional evidence of his guilt in the form of similar poisonings of two more persons emerged].)

Rosses incorrectly relies on *People v. Pellegrino* (1978) 86 Cal.App.3d 776 (*Pellegrino*) and *Hartman*, *supra*, 170 Cal.App.3d 572.  The court in *Pellegrino* upheld the trial court's dismissal based on a pre-accusation delay resulting from a lack of interest in prosecuting the original offense but did not address whether new, admissible evidence of similar criminal conduct could be sufficient justification for a delay.  (*Pellegrino*,

---

[3]    Rosses argues to the extent *New* supports the proposition propensity evidence of another unrelated criminal allegation can justify a lengthy prearrest delay, it makes new law and is wrongly decided.  We disagree.  The other criminal allegations in *New*, as in the present case, are additional relevant evidence with respect to the prior allegations because they relate to a similar crime conducted in a similar manner.  (*New*, *supra*, 163 Cal.App.4th at p. 466.)

11

*supra*, 86 Cal.App.3d at p. 781.)  The court in *Hartman* found no justification for delay where the People waited an additional five and a half years after obtaining new evidence to file a murder charge.  (*Hartman*, *supra*, 170 Cal.App.3d at p. 582.)  Here, there was no such postdiscovery delay.

For the reasons stated above, we conclude there is substantial evidence to support the trial court's findings Rosses did not suffer substantial prejudice and the delay was neither negligent nor undertaken to gain an advantage.  Accordingly, we conclude the trial court did not abuse its discretion in denying Rosses's motion to dismiss.

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:

HALLER, J.

McINTYRE, J.