Filed 5/23/18

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>REGINALD BROWN,<br><br>        Defendant and Appellant. | A144372<br><br>(Alameda County<br>Super. Ct. No. CH54151) |

A jury found defendant Reginald Brown guilty of one count of continuous sexual abuse of a child under the age of 14 years old and eight counts of lewd acts upon a child under the age of 14 years. In all, there were three victims, Jane Does 1, 2, and 3. Brown's primary contention on appeal is that the six convictions of lewd acts upon Jane Doe 3 (Pen. Code,[1] § 288, subd. (a)) are barred by the statute of limitations.

The crimes of conviction as to victim Jane Doe 3 occurred over the course of about two years ending in 1994 when Jane Doe 3 was around 13 years old, but Brown was not charged until February 2013. At the time of the offenses, the statute of limitations was six years, subject to a one-year extension when a victim first reports the offenses to law enforcement. Specifically, section 803 provides an extension of the statute of limitations for certain sex offenses—including violation of section 288— allowing the filing of a criminal complaint within one year of a report to a law enforcement agency by a person alleging he or she was the victim of such an offense

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

[1] Further undesignated statutory references are to the Penal Code.

under the following circumstances:  (1) the victim was under 18 years of age at the time of the offense, (2) the limitations period has expired, (3) the offense involved substantial sexual conduct, and (4) there is independent evidence corroborating the victim's allegation.  (See § 803, subd. (f); former § 803, subd. (g), added by Stats. 1984, ch. 1270, § 2, as amended by Stats. 1993, ch. 390, § 1 (former § 803(g.)[2])

Jane Doe 3, as an adult, reported Brown's conduct to law enforcement in December 2012, and he was charged in February 2013, less than one year later.  But Brown contends the prosecution of the offenses involving Jane Doe 3 is time-barred because reports of Brown's conduct were actually made much earlier, in 1994.  In the alternative, he argues there were issues that should have been determined by the jury.  In the published portion of this opinion, we conclude a report of sexual abuse made to law enforcement by a person or agency other than the victim does not constitute a report by the victim under former section 803(g), even if that report is based on the victim's allegations of abuse.  In the unpublished portion of this opinion, we conclude Brown's remaining arguments are without merit.  We affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Brown's contentions on appeal do not require a detailed description of the facts underlying his convictions, and we only briefly summarize them viewing the evidence in the light most favorable to the prosecution.  (*People v. Linder* (2006) 139 Cal.App.4th 75, 79.)[3]

Jane Doe 3 was born in 1980.  Growing up, she was family friends with Brown and his family, and she viewed Brown as an uncle.  When she was 11 or 12 years old,

---

[2] This one-year extension has existed since 1994.  (See former § 803(g); *Ream v. Superior Court* (1996) 48 Cal.App.4th 1812, 1815, 1820 (*Ream*).)  Currently, a substantively similar version of this one-year extension can be found at subdivision (f) of section 803.  The parties agree that former section 803(g) is the version of this statute of limitations extension that applies in this case, however.

[3] Also, because the offenses involving Jane Doe 1 and Jane Doe 2 are not relevant to this appeal, we do not describe the facts underlying those offenses.

2

Jane Doe 3 went to Brown's house "[a]ll the time" to play or get her hair done.[4] Brown would pick her up after school in his van and drive her to his house.

Jane Doe 3 testified Brown was sexually inappropriate with her multiple times when she was alone with him in his van. He would park his van down the street from her house, and she recalled, "it was a lot of touching on my legs, touching the inside of my pants. And my hand being placed on his penis." This happened more than 20 times over the course of about two years. She did not tell anyone because she thought she would get in trouble. On one occasion when she was 13 years old, Jane Doe 3 was playing outside at Brown's house, and he called her in the house and locked the door. Brown called her to his bedroom and had her sit on the bed. He had sexual intercourse with her and orally copulated her.[5] This was the last incident of sexual contact between Jane Doe 3 and Brown.

After the incident at Brown's house, Jane Doe 3 told her mother about the abuse. She testified that her mother believed her. The two of them went to Brown's house, and her mother told Brown and his girlfriend Selma what Jane Doe 3 said. Selma responded that she did not believe the girl, and Brown smirked. Jane Doe 3 and her mother left Brown's house, and Jane Doe 3 never saw Brown again.

Jane Doe 3's mother N.H. testified that, when her daughter was around 12 years old, she told N.H. that Brown had done something inappropriate to her. Soon after this, N.H. and Jane Doe 3 went to Brown's house. N.H. confronted Brown and Selma about what Jane Doe 3 said, and "they denied it."

After they left Brown's house, N.H. and Jane Doe 3 went to the Hayward Police Department. N.H. testified, "I confronted the clerk [at the police station] and told them

---

[4] At that time, Brown lived with his girlfriend Selma and her children. Selma and her oldest daughter would do Jane Doe 3's hair. Jane Doe 3 was also good friends with one of Selma's sons; they would ride bikes or play video games together.

[5] This was not the first time Brown orally copulated her. He orally copulated her more than once while they were parked in his van. He also had sexual intercourse with Jane Doe 3 in his van. She was about 12 years old when this happened.

everything that was happening. But they didn't write notes or anything, so I really didn't get any help." Jane Doe 3 did not go inside the police station with her mother. N.H. testified she did not receive any follow-up from the police, and she did not attempt to follow up either.

Documentary evidence at trial showed that Jane Doe 3 and her mother reported Brown's conduct to Child Protective Services (CPS) in 1994. The prosecution presented an Alameda County intake form titled "Alameda County Emergency Response Unit CPS Intake Form," which documents a report of sexual abuse made on November 2, 1994. It includes the following handwritten narrative indicating that Jane Doe 3 personally reported the abuse to CPS: "[Jane Doe 3] said she was not allowed to visit with a particular uncle's family because of something which happened 7 months ago. On being questioned [redacted] she stated uncle had molested her—'Ate me out'—. Occurred 3X. When confronted by mo[ther] at the time, uncle denied it, aunt refused to believe it. Mo[ther] doubted story but tended to believe dau[ghter]. Unclear if lack of contact for past 7 mo. is because mo[ther] won't let her go there for her protection or if it is because uncle's family said she can't come back. No report was made to police. [¶] RP [reporting party] is concerned re [redacted] relationship and would like to be called by CWW [child welfare worker] before contact with family is made." Brown's name and address were listed on the intake form.

A second document in evidence, described as an "Emergency Response Unit Investigation Attachment" (investigative report) documents the steps CPS took after receiving the report of sexual abuse. It shows a home visit was made to Jane Doe 3's home on November 4, and a social worker spoke with a counselor on November 14, who was seeing Jane Doe 3. The document also shows, on November 12, 1994, "Cross-reported molest to Officer Audrey Stevens.[6] The molester is allegedly Reggie Brown at [address], telephone [telephone number]."

---

[6] A witness at trial identified Audrey Stevens as a former administrative employee of the Hayward Police Department. Her duties included handling CPS referrals.

Under the heading "Precipitating Incident Factors," the investigative report reads, "[Jane Doe 3] has reported that, at her dad's house, she was twice sexually molested by her uncle, Reggie Brown. . . . According to [Jane Doe 3], she states that her uncle touched her private parts and licked her with his tongue . . . . [Jane Doe 3] says that she thinks it happened about three times. [Her parents] have handled the situation by not allowing Reggie Brown to have any contact with their daughter." Under the heading "Child Assessment Factors," the document provides, "Apparently, [Jane Doe 3] is having a somewhat difficult time . . . . The family believes that she was molested by Reggie Brown and the parents have gone to the Alameda County Sheriff's Department and pressed charges. . . . [Jane Doe 3's parents] . . . have decided the way to stop the problem is simply no contact. Both Mr. and Mrs. [H.] can't fathom this Mr. Brown doing any kind of sexual molest, subsequently they are having somewhat of a difficult time proceeding with what needs to be done toward prosecution, etc. They did, however, follow through with the referral to the Alameda County Sheriff's Department." The CPS case was closed in 1995.

At trial, Jane Doe 3 and her mother did not recall their dealings with CPS.

On December 6, 2012, when she was 32 years old, Jane Doe 3 went to the Alameda County Sheriff's Office and reported to Deputy Jason Hawks that Brown molested her when she was a child. On February 15, 2013, an amended criminal complaint was filed against Brown alleging he committed sexual abuse upon Jane Doe 3. This was the first criminal complaint that named Jane Doe 3 as a victim.

## DISCUSSION

### I. The Statute of Limitations and Former Section 803(g)

#### A. *Applicable Law*

Former section 803(g) provides in full: "Notwithstanding any other limitation of time described in this section, a criminal complaint may be filed within one year of the date of a report to a law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261,

286, 288, 288a, 288.5, 289, or 289.5.  This subdivision shall apply only if both of the following occur:

"(1)  The limitation period specified in Section 800 or 801 has expired.

"(2)  The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation which is not mutual, and there is independent evidence that clearly and convincingly corroborates the victim's allegation.  No evidence may be used to corroborate the victim's allegation which would otherwise be inadmissible during trial.  Independent evidence shall not include the opinions of mental health professionals."

Brown's offenses against Jane Doe 3 occurred between June 1, 1993, and August 1, 1994.  The statute of limitations for violation of section 288 at that time was six years. (Former § 800, added by Stats.1984, ch. 1270, § 2; see *Ream*, *supra*, 48 Cal.App.4th at p. 1815, fn. 2.)  The prosecution bears the burden of proving, by a preponderance of the evidence, that a charged offense was committed within the applicable period of limitations.  (*People v. Lopez* (1997) 52 Cal.App.4th 233, 248.)  In this case, the prosecution relied on the one-year statute of limitations extension of former section 803(g), alleging with respect to the counts involving Jane Doe 3, "It is further alleged pursuant to Penal Code section 803(f) [*sic*[7]] . . ., that the victim in the above offense was under 18 years of age at the time of the offense and reported said offense to a California Law Enforcement agency on December 6, 2012."

B.      *Analysis*

Brown maintains that the six counts involving Jane Doe 3 (counts 6, 7, and 9 through 12) are barred by the statute of limitations.  He argues that both the report by

---

[7] As we have mentioned, the one-year statute of limitations extension allowing prosecution of certain sex offenses within a year of a report to law enforcement by the victim is currently found at subdivision (f) of section 803.  (See *People v. Linder*, *supra*, 139 Cal.App.4th at p. 78, fn. 2 [statutory amendments to section 803 in 2005 designated former subdivision (g) as subdivision (f)].)  But the version of the statute of limitations extension applicable to this case is former section 803(g).

Jane Doe 3's mother to the Hayward Police Department in 1994 and the report made to CPS (which was later passed on to the police) satisfy the requirement of a report to law enforcement made by the victim under former section 803(g), and therefore Jane Doe 3's subsequent report to the Alameda County Sheriff's Office in December 2012 did not serve to extend the statute of limitations for one year. Brown raised these arguments in three motions before the trial court—a motion to dismiss, a motion for judgment of acquittal under section 1118.1, and a motion for new trial—which were denied.

Brown contends the trial court erred in denying the defense motions. We review the trial court's rulings de novo. (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 ["application of the statute of limitations on undisputed facts is a purely legal question" reviewed de novo]; see also *People v. Maciel* (2013) 57 Cal.4th 482, 522 [a motion under section 1181.1 is a question of law, subject to independent review].)

We conclude Brown's statute of limitations argument fails because Jane Doe 3 never reported her abuse to a law enforcement agency before December 2012. Reports of abuse were made to law enforcement by Jane Doe 3's mother and by CPS. But under the plain language of the statute, former section 803(g) applies only to a report to law enforcement *made by the victim*. As the Court of Appeal in *Ream*, *supra*, 48 Cal.App.4th at page 1818, explained: "The relevant language of section 803(g) is clear and unambiguous. A prosecutor may file a complaint charging any of the specified sex offenses within [one] year of the date of 'a report to a law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of' the offense. The statute makes no reference to a report by a person who is not a victim. Indeed, the statute requires 'independent evidence that clearly and convincingly corroborates *the victim's* allegation' (italics added) and proscribes evidence not admissible during trial 'to corroborate *the victim's* allegation' (italics added)."

In *Ream*, the defendant was charged with three counts of violation of section 288 after the six-year statute of limitations had expired. The only evidence linking the defendant to the charges was 10 Polaroid pictures that the defendant's wife had turned

over to law enforcement. The victim shown in the photographs was six or seven years old when the photographs were taken and was 13 years old at the time she spoke to an investigator. The victim apparently was not aware that she had been molested; she denied that the defendant molested her.[8] (*Ream*, *supra*, 48 Cal.App.4th at pp. 1815–1816.) The defendant filed a motion to dismiss based on the statute of limitations, and the prosecution argued the criminal case was timely because it was brought within one year of the ex-wife reporting the crimes to law enforcement. The trial court denied the defendant's motion to dismiss, ruling that a report from a person not the victim would satisfy former section 803(g). (*Ibid.*) The Court of Appeal, however, issued a peremptory writ of mandate directing the court to dismiss the charges. (*Id.* at p. 1821.)

The *Ream* court relied on the plain meaning of the language of former section 803(g) to require a report *from the victim*. (*Ream*, *supra*, 48 Cal.App.4th at pp. 1817–1818.) The court also considered the legislative history of the statute, which "demonstrate[d] that the Legislature was concerned with the problem of child victims of sex crimes who wait until they are adults to report sex offenses committed against them." (*Id.* at p. 1820.) The court noted, "Nothing in the legislative history suggests the Legislature intended, despite the use of language inconsistent therewith, to extend the statute of limitations upon the report of a non-victim . . . . If the Legislature had intended th[is] result[], it would have expressly said so." (*Id.* at p. 1821, fn. omitted.)

### 1. *The Report to The Hayward Police Department*

Here, Jane Doe 3's mother's report to the Hayward police was not a qualifying report under former section 803(g) because, although the report was made to a law enforcement agency, the victim did not make the report. Jane Doe 3's mother made the report while Jane Doe 3 remained in the car. As the trial court explained in denying Brown's motion to dismiss, a report to law enforcement must be made by the victim

---

[8] The facts of *Ream* are unusual. Not only did the victim not report the offenses, when—at age 13 years old—she was questioned about the defendant's conduct, the victim seemed unaware that she had been molested when she was six or seven years old. (*Ream*, *supra*, 48 Cal.App.4th at pp. 1815–1816.)

herself, and Jane Doe 3's mother's "actions [in 1994] were not sufficient to trigger the statute of limitations."

Brown asserts nothing in *Ream* or the legislative history of former section 803(g) "suggests that [the] report to law enforcement must have come directly from the mouth of the victim." But this ignores the language of the statute itself, which requires "a report *to* a law enforcement agency *by* a person" alleging he or she was the victim of abuse. (Former § 803(g), italics added.) A report by a person other than a victim to law enforcement is not a report by the victim.

Further, as *Ream* reasoned, "The Legislature may well have recognized that youthful victims of sexual abuse may be dissuaded from reporting abuse at the time of its occurrence by shame, fear of the consequences, intimidation by the abuser, or psychological trauma." (*Ream*, *supra*, 48 Cal.App.4th at p. 1819.) As the Attorney General posits, "the solution the Legislature provided was to give no limit to the time that a victim, once grown, may report certain types of sex abuse to law enforcement, should she herself decide to initiate the process." We agree with the Attorney General that it is reasonable the Legislature would "leave the ultimate prerogative to the victim to decide whether she feels prepared to go forward with initiating law enforcement involvement."

Brown also argues Jane Doe 3's mother's report to the police should be considered a report by Jane Doe 3 herself because her mother acted as her agent. We are not persuaded. Brown cites Family Code section 7601, subdivision (b), and Civil Code sections 2299, 2316, and 2330, but these statutes do not create an agency relationship between a parent and child for purposes of interpreting the Penal Code.[9] Nothing in these

---

[9] Family Code section 7601, subdivision (b) provides, " 'Parent and child relationship' as used in this part means the legal relationship existing between a child and the child's natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties, and obligations. The term includes the mother and child relationship and the father and child relationship." By its terms, the definition of Family Code section 7601, subdivision (b), is for use in "this part," referring to the Uniform Parentage Act (see Fam. Code, §§ 7600 et seq.).

statutes suggests that, in interpreting former section 803(g), the phrase "by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime" must be read to mean "by a person . . . [alleging he or she] was the victim of a crime *or by such a victim's parent*." In this matter, "our role is to interpret the language of the statute, not to rewrite the statute." (*McGee v. Balfour Beatty Construction, LLC* (2016) 247 Cal.App.4th 235, 244.)

2.    *The CPS Report*

The report to CPS was not a qualifying report under former section 803(g) either. Although the documentary evidence shows Jane Doe 3 spoke to CPS about Brown's abuse, she made her report to a social worker, not a law enforcement agency.[10] The CPS investigative report notes that the molestation allegations were "[c]ross-reported" by CPS to the Hayward Police Department on November 12, 1994. Brown argues that, because the cross-report was based on a report that originated with the victim, this should qualify as a report to law enforcement by the victim. Again, we are not convinced. "[T]the language of section 803(g) clearly and unambiguously requires that the report be made by the victim." (*Ream*, *supra*, 48 Cal.App.4th at p. 1815.) A report to a law enforcement agency by CPS is not a report by the victim.

The Attorney General observes that if the Legislature had intended to trigger the statute of limitations extension through a report to a parent or CPS worker, it knew how to do so and could have done so. We agree with the Attorney General's reasoning. If the

---

Civil Code section 2299 provides, "An agency is actual when the agent is really employed by the principal." Civil Code section 2316 provides, "Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess." Civil Code section 2330 provides, "An agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal."

[10] In his motion for judgment of acquittal under section 1118.1, Brown argued that CPS should qualify as a law enforcement agency under former section 803(g). He does not make this argument on appeal.

Legislature intended a report to law enforcement by a victim's parent or by CPS to trigger the statute of limitations extension of former section 803(g), we believe it would have done so by explicitly.

In sum, neither the report by Jane Doe 3's mother to the Hayward Police Department nor the cross-report to the Hayward Police Department by CPS was a report by the victim under former section 803(g).[11]  Because Jane Doe 3's report of abuse to the Alameda County Sheriff's Office in December 2012 was the first report of abuse to law enforcement by the victim, the criminal complaint filed in February 2013 was timely under former section 803(g).  Consequently, the trial court did not err in denying Brown's motions based on the statute of limitations.

## II.     Failure to Submit the Statute of Limitations Issue to the Jury

Brown next contends the trial court erred in declining to allow the jury to resolve the statute of limitations issue.

### A.     *Procedural Background*

After his motion for judgment of acquittal was denied, Brown requested that the trial court give a proposed jury instruction on whether the charges related to Jane Doe 3 were timely.[12]  Brown's proposed instruction would have specifically informed the jury,

---

[11] Because we conclude no report to law enforcement *by the victim* was made before December 2012, we need not consider whether there was a report that alleged "substantial sexual conduct" as required by *People v. Superior Court* (*Maldonado*) (2007) 157 Cal.App.4th 694, 698 (*Maldonado*) ["the one-year period of limitations under that provision does not begin to run upon a report of unlawful sexual conduct that does not include allegations of substantial sexual conduct"].)  Nor need we address Brown's argument that *Maldonado* was wrongly decided.

[12] The jury was instructed that it had to find the charges related to Jane Doe 3 involved "substantial sexual conduct" as required under former section 803(g).  The jury was instructed:  "For counts 6 through 12, the People must also prove by a preponderance of the evidence that the act engaged in by the defendant was an act of substantial sexual conduct.  [¶] Substantial sexual conduct means oral copulation or masturbation of the child's or perpetrator's vagina or rectum by the other person's penis or any foreign object.  [¶] Proof by a preponderance of the evidence is a different burden of proof from

11

"Doe [3] personally reported these crimes to a law enforcement agency for the first time on either November 4, 1994, or December 6, 2012."[13]  The jury then would have been asked to determine on which of these two dates the first report occurred.

Brown's attorney acknowledged that the trial court had ruled as a matter of law that neither the report to CPS nor the cross-report to the police by CPS qualified as a report to a law enforcement agency within the meaning of former section 803(g), a conclusion that we now affirm was correct.  But, he argued, the jury could nonetheless infer that Jane Doe 3 personally reported Brown's conduct to law enforcement based on the CPS investigative report.  Brown's attorney relied on the generalized statements in the report that "[t]he family believes that she was molested by Reggie Brown and the parents have gone to the Alameda County Sheriff's Department and pressed charges," and that "[t]hey did . . . follow through with the referral to the Alameda County Sheriff's Department."  He also relied on the statement, "The family has been helpful in allowing [the social] worker to talk to [Jane Doe 3] and [redacted] and has followed through with the referral to Alameda County Sheriff's Dept."  He argued this showed "some members of [Jane Doe 3's] family" went to the Sheriff's Office and it would be reasonable to infer

_____

proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you concluded that it is more likely than not that the fact is true."

[13] In full, Brown's proposed jury instruction read as follows:  "The defendant may not be convicted of the crimes charged in Counts 6-12 unless the prosecution began within one year of the date the crimes were personally reported by [] Doe [3] to a law enforcement agency for the first time.

"The People have the burden of proving by a preponderance of the evidence that prosecution of this case began within the required time.  [¶] This is a different standard of proof than proof beyond a reasonable doubt.  To meet the burden of proof by a preponderance of the evidence, the People must prove that it is more likely than not that prosecution of this case began within the required time.

"[] Doe [3] personally reported these crimes to a law enforcement agency for the first time on either November 4, 1994, or December 6, 2012.  Prosecution of Counts 6-12 began on February 15, 2013.  [¶] If the People have not met this burden, you must find the defendant not guilty of the crimes charged in Counts 6-12."

12

that, "as part of that process of following up with the Alameda County Sheriff's Office, [Jane Doe 3] personally reported to the Sheriff's Office essentially the same facts that are contained in the CPS report . . . ."

The trial court declined to give the proposed jury instruction, finding the inference Brown urged was "far too speculative and unsupported by the record."

B.    *Analysis*

Brown argues on appeal that the jury should have been allowed to decide the following "factual questions":  (1) whether Jane Doe's mother acted as "a parent/agent" on her daughter's behalf when she reported the abuse to the Hayward police; (2) whether the mother's report involved "substantial sexual conduct" as required under *Maldonado*, *supra*, 157 Cal.App.4th 694; (3) whether CPS acted as Jane Doe 3's agent in cross-reporting Jane Doe 3's allegations to the Hayward police; and (4) whether Jane Doe 3 personally reported Brown's conduct to law enforcement when her family "followed through" with the referral to Alameda County Sheriff's Department.

The first and third questions are legal issues, and we have rejected Brown's argument that a report by a person other than the victim triggers the one-year extension of the limitations period under former section 803(g).  The second question is irrelevant because the mother's report to the Hayward police was not a report by the victim in any event.  (See fn. 11, *ante*.)

That leaves the fourth question, whether Jane Doe 3 herself personally reported Brown's conduct to the Alameda County Sheriff's Office.  The answer to this question depends entirely on the CPS investigative report that Brown relies on, and whether it provides evidence from which a jury could reasonably infer that Jane Doe 3 *personally* reported Brown's conduct to law enforcement.  The parties agree that there is no dispute about what the CPS investigative report says.  It refers to "the parents" going to the Sheriff to press charges.  The same paragraph states "Both Mr. and Mrs. [H.]" couldn't fathom Brown committing sexual molestation, and the next sentence reads, "They did, however, follow through with the referral to Alameda County Sheriff's Department." Fairly read, "They" refers back to Mr. and Mrs. H., Jane Doe 3's parents.  Nothing

13

suggests that family members other than Jane Doe 3's parents went to the Sheriff's Office. Thus, we agree with the trial court that Brown's assertion that Jane Doe 3 personally reported abuse to law enforcement was purely speculative. Certainly, there was no evidence to support Brown's requested instruction that "Doe [3] personally reported these crimes to a law enforcement agency for the first time on . . . November 4, 1994." Because no reasonable jury could have found for Brown on this issue, the trial court did not err in declining to give the requested instruction. (*People v. Marshall* (1996) 13 Cal.4th 799, 848.)[14]

## DISPOSITION

The judgment is affirmed.

---

[14] In *People v. Zamora* (1976) 18 Cal.3d 538, cited by Brown, our Supreme Court held that the trial court had the authority to hold an evidentiary hearing for purposes of determining whether as a matter of law the statute of limitation barred the prosecution. (*Id.* at p. 563, fn. 25.) The court observed, "If the People prevail after such a hearing, then the limitation issue must still be resolved by the jury if it remains disputed by the defendant." (*Ibid.*) This assumes, however, that the defendant's factual dispute is supported by substantial evidence. (See *People v. Hendricks* (1988) 44 Cal.3d 635, 643 ["It is of course the rule that the court is under no duty to give a requested instruction when there is no substantial evidence in support."].) Here, no substantial evidence supports Brown's theory that Jane Doe 3 personally reported the abuse to law enforcement in November 1994.

_____
Miller, J.

We concur:


_____
Kline, P.J.


_____
Richman, J.



A144372, *People v. Brown*


15

Court:  Alameda County Superior Court

Trial Judge:  Hon. Kevin R. Murphy


Kyle Gee, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Catherine A. Rivlin, Supervising Deputy Attorney General, Hanna Chung, Deputy Attorney General, for Plaintiff and Respondent.

A144372, *People v. Brown*