Filed 12/22/23  P. v. Mendez CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B320740 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA089066) |
| v. | |
| MARTIN MENDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Daniel B. Feldstern, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Marc A. Kohm, and Nikhil Cooper, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

A jury found defendant Martin Mendez guilty of three counts of committing a lewd act on a child and determined that the criminal complaint was filed within the extended statute of limitations under Penal Code section 803, subdivision (f).[1]  On appeal, defendant contends his prosecution was time-barred and the trial court erred when it answered a jury question about the limitations period.  We affirm.

## II.  FACTUAL BACKGROUND

A.  *Defendant's Abuse of Victims*[2]

1.  <u>Victims' Family</u>

E.R. is defendant's sister.  She and her former husband had seven children.  The oldest three were:  daughter V.H. and sons A.R. Jr. (A.R.), and J.R.

Between August 1985 and December 1988, E.R. and her family lived in a house in Lake View Terrace.  Defendant shared a room in the home with a non-family member.

---

[1]  All further statutory references are to the Penal Code unless otherwise stated.

[2]  Because defendant's arguments on appeal concern whether the criminal charges in this case were timely filed, we do not detail defendant's underlying criminal conduct, except as necessary for context.

Between December 1988 and March 1990, E.R. and her family lived in a home in Pomona. Defendant did not live in that home, but he did visit E.R. and her family there.

In April 1990, E.R. and her husband purchased a home with defendant in Pacoima. Defendant lived in that house with the family. E.R. and her family lived there until 1992, when they moved to Michigan.

2.    <u>Abuse of V.H.:  1988–1989</u> (counts 1, 3, and 7)

V.H. was born in October 1980.[3] During the time V.H. lived in the Lake View Terrace home, defendant engaged in substantial sexual conduct with her.

3.    <u>Abuse of J.R.:  1990</u> (counts 8 and 11)

J.R. was born in February 1984. While J.R. lived at the Lake View Terrace home—that is, between August 1985 and December 1988[4]—defendant engaged in substantial sexual conduct with him.

---

[3]    At the time of trial, V.H. was 41.

[4]    J.R. confirmed that he turned four in February 1988 and that he did not recall "how far apart each act [of abuse] happened from one another . . . ." At the time of trial, he was 37.

3

B.     *Victims Report Abuse*

    1.     <u>V.H.</u>

At J.R.'s request, in January 2016,[5] V.H. left a voicemail message with Los Angeles Police Detective Mario Gallegos.  She later spoke on the phone with the detective, who instructed her to make a written report to her local law enforcement agency, the Holland, Michigan, Police Department (Holland Department).

On March 25, 2016, V.H. went to the Holland Department and submitted a handwritten report describing what had happened to her.  The report was not admitted in evidence at trial.[6]  V.H. did not speak to Holland police officers on that day, except to ask that they fax the report to the Los Angeles Police Department (LAPD).  The Holland Department sent the report to Detective Gallegos, who acknowledged the report had been faxed to his attention but did not recall receiving it.  Detective Gallagos

---

[5]     V.H. said she made the call around the time her brother J.R. spoke to Detective Gallegos.  J.R. first spoke to Detective Gallegos in January 2016.

[6]     V.H. did not testify about the description of abuse that she wrote in her report.  On direct, she was shown the report to refresh her recollection about when she first contacted law enforcement, but she was not asked to recall her description of abuse as detailed in the report and she did not testify as to those details.  And, on cross-examination, she admitted that she did not include in the Holland report certain details of abuse that she would later provide to the police, but she was not asked to testify about her description of abuse in that report and, other than stating that she wrote down what had happened to her, she did not testify about the details of her written description.

4

also did not recall speaking to V.H. and only learned that she had sent a report from court proceedings related to this case.

On January 31, 2017, V.H. spoke to Los Angeles Police Detective Lawrence Conception and told him that defendant touched her vagina with his hands and that he placed his erect penis on her vagina and rubbed his penis against her vagina and ejaculated on her legs and underwear.  V.H. stated the abuse took place when she was seven to ten years old.

2.    J.R.

After a meeting in December 2015 with his pastor and some family members about defendant's abuse, J.R. began trying to contact the LAPD sometime in January 2016.  At some point in that month, he got in contact with Detective Gallegos and told him that he had been the victim of "sexual child abuse," but he did not "disclose [the] details of substantial sexual conduct," meaning he did not describe in detail masturbation or penetration.[7]  The detective advised him to file a formal report with the police in Michigan, where J.R. lived.

_____

[7]    On direct examination, J.R. testified that he first disclosed details of the sexual abuse to Detective Gallegos in July 2016. On cross-examination, however, defense counsel questioned J.R. about his "first contact" with Detective Gallegos, suggesting that the date was January 27, 2016.  J.R. then testified that he told Detective Gallegos, on that date, that defendant "touched his penis on [his] butt [cheeks]" and ejaculated on him.  But on redirect, J.R. explained that he had been confused by the timeframes of defense counsel's questioning and confirmed that, during his first contact with Detective Gallegos in January 2016, he did not describe details of defendant's molestation.

5

Detective Gallegos confirmed that he first spoke to J.R. on January 27, 2016, for less than ten minutes. J.R. was nervous and upset, but he told the detective that he had been molested by defendant "many years ago" and that the abuse occurred in Lake View Terrace. The detective advised J.R. to "seek out . . . the local law enforcement agency and to disclose to them what had [happened] to him." But before the detective could obtain further details or J.R.'s contact information, J.R. hung up on him.

On January 29, 2016, J.R. went to the Holland Department and spoke with two officers. J.R. told the officers that he had been abused but did not give them any details about the abuse. The Holland Department's written report of J.R.'s visit was not admitted into evidence at trial.

Detective Gallegos confirmed that sometime between February 2, 2016, and July 27, 2016, J.R.'s report to the Holland Department was forwarded to him for his review.

J.R. next called Detective Gallegos on March 30, 2016, to inform him that he had made a report to the Holland Department and to determine the next steps in the process. Detective Gallegos verified that, during the March 30, 2016, call with J.R., he did not ask him for his contact information or any further details of abuse, as the call was "very short" and J.R. hung up "abruptly".

On July 27, 2016, J.R. told Detective Gallegos in a telephone conversation "more detailed information of the sexual abuse." He explained that defendant "would take him into an unknown room and rub his erect penis between [J.R.'s] butt cheeks until he ejaculated." J.R. testified that this was the first time he had described conduct constituting masturbation to a California law enforcement agency.

6

# III.  PROCEDURAL BACKGROUND

On July 6, 2017, the Los Angeles County District Attorney filed a criminal complaint in this matter.  The District Attorney ultimately charged defendant in an information with 13 counts— seven as to V.H. and five as to J.R.[8]—of committing lewd acts on a child in violation of section 288, subdivision (a).  The information alleged that the statute of limitations on the crimes involving each victim was extended pursuant to section 803, subdivision (f)(1) because, among other things, each of them had made a report[9] involving substantial sexual contact by defendant to a California law enforcement agency, and the criminal complaint against defendant had been filed within one year of those reports.

Following the first trial, the jury acquitted defendant on eight counts, but failed to reach a verdict as to counts 1, 3, 7, (involving V.H.) and 8 and 11 (involving J.R.).  Following a retrial of those five counts, the jury found defendant guilty on counts 1, 3, and 8, but was unable to reach a unanimous verdict as to counts 7 and 11, and the trial court declared a mistrial as to those counts.

The trial court sentenced defendant to an aggregate term of 10 years, comprised of a middle-term sentence of six years on

---

[8]     The District Attorney also charged defendant with one count of committing lewd acts on A.R., but the jury in the first trial found defendant not guilty of that count.

[9]     The District Attorney alleged that V.H. made her report in March 2017; and J.R. made his report on July 27, 2016.

count 1, and two consecutive one-third the middle term sentences of two years each on counts 3 and 8.

Defendant appealed from the judgment.

## IV. DISCUSSION

A. *Statute of Limitations*

Defendant argues that the trial court erred when it concluded that the prosecution had presented sufficient evidence to allow the jury to determine whether the charges were timely filed. According to defendant, the facts presented by the prosecution showed, as a matter of law, that the triggering date for the applicable statute of limitations—section 803, subdivision (f)(1)—was V.H.'s March 25, 2016, report to the Holland Department. As defendant views the evidence, that report, made at the direction of the LAPD, "contained allegations of substantial sexual contact;" and, when read together with the Holland Department's February 2, 2016, report of J.R.'s visit, it constituted personal reporting to a California law enforcement agency sufficient to satisfy the requirements of section 803, subdivision (f)(1) and time bar defendant's convictions.

1. <u>Background</u>

As noted, the information alleged that V.H. made her report of substantial sexual contact to a California law enforcement agency in March 2017 and J.R. first made his report on July 27, 2016. The prosecution of this offense commenced on July 6, 2017, when the District Attorney filed its complaint.

8

(§ 804, subd. (b).)  At trial, the prosecution stipulated that the charges had been filed outside the applicable six-year limitations period.

At the close of the prosecution's case, defendant made a motion to dismiss the charges for insufficient evidence.  He argued that the prosecution had failed to meet its burden "regarding substantial reporting to the California agency to comply with the [section 803, subdivision (f)(1)] statute of limitations . . . ."  The court denied the motion, finding that "there is sufficient evidence to go to the jury on the compliance level of the statute of limitations."

    2.    Legal Principles

        a.    Section 1118.1[10]

"When a trial court rules on a motion for a judgment of acquittal under section 1118.1, the standard the trial court must apply is the same as what the appellate court applies when reviewing the sufficiency of the evidence supporting conviction.  A section 1118.1 motion is used to cull the ""few instances in which the prosecution fails to make even a prima facie case."""  [Citation.]  A court resolves a section 1118.1 motion by determining whether the prosecution presented sufficient evidence, measured from the moment the section 1118.1 motion

_____

[10]    Although the record on defendant's motion to dismiss contains references to both section 1118 and section 1118.1, the Attorney General agrees that, because the case was tried to the jury, section 1118.1 was proper provision under which to bring the motion.

9

is made, to permit the jury to resolve the issue.  [Citation.]  We review the trial court's determination de novo.  [Citation.]" (*People v. Wilson* (2021) 11 Cal.5th 259, 301.)

### b.     Section 803, subdivision (f)(1)[11]

"The statute of limitations for violating . . . section 288 . . . is six years from the commission of the offense.  [Citations.] Section 803, subdivision (f), however, extends the period of limitations until one year from the date of a report to a California law enforcement agency by a person alleging he or she, while a minor, was the victim of a violation of specified statutes, including section[ ] 288 . . . , provided the following criteria are met:  (1) the limitation period has otherwise expired; (2) the reported crime involved substantial sexual conduct; (3) there is admissible, independent evidence that corroborates the victim's

---

[11]     Section 803, subdivision (f) provides, in pertinent part: "**(f)**  [¶]  **(1)** Notwithstanding any other limitation of time described in this chapter, if subdivision (b) of Section 799 does not apply, a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that the person, while under 18 years of age, was the victim of a crime described in Section . . . 288 . . . . [¶]  **(2)**  This subdivision applies only if all of the following occur: [¶]  **(A)**  The limitation period specified in Section 800, 801, or 801.1, whichever is later, has expired.  [¶]  **(B)**  The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation that is not mutual.  [¶]  **(C)**  There is independent evidence that corroborates the victim's allegation.  If the victim was 21 years of age or older at the time of the report, the independent evidence shall clearly and convincingly corroborate the victim's allegation."

allegations." (*People v. Superior Court* (*Maldonado*) (2007) 157 Cal.App.4th 694, 697–698, fn. omitted (*Maldonado*).)

The case law interpreting the requirements of section 803, subdivision (f) establishes that a report of sexual abuse extends the limitations period only if it: (1) is made by the victim (*People v. Brown* (2018) 23 Cal.App.5th 765, 773 (*Brown*)); (2) is made to a California law enforcement agency (*People v. Lewis* (2015) 234 Cal.App.4th 203, 208–211); and (3) describes substantial sexual conduct, as defined under section 1203.066, subdivision (b), excluding only masturbation that is not mutual[12] (*Maldonado, supra*, 157 Cal.App.4th at p. 702).

"The prosecution bears the burden of proving, by a preponderance of the evidence, that a charged offense was committed within the applicable period of limitations." (*Brown, supra*, 23 Cal.App.5th at p. 771.) "'When an issue involving the statute of limitations has been tried, we review the record to determine whether substantial evidence supports the findings of the trier of fact. [Citations.]' [Citation.]" (*People v. Petronella* (2013) 218 Cal.App.4th 945, 957.)

---

[12] Section 1203.066, subdivision (b) provides: "'Substantial sexual conduct' means penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object, oral copulation, or *masturbation of either the victim or the offender*." (Italics added.) Section 803, subdivision (f)'s exclusion from that definition of masturbation that is not mutual has been interpreted to mean self-masturbation; mutual masturbation is therefore included in the subdivision (f)'s definition of substantial sexual conduct. (*People v. Lamb* (1999) 76 Cal.App.4th 664, 682; *People v. Terry* (2005) 127 Cal.App.4th 750, 771–772.)

3.    Analysis

Because the complaint in this matter was filed on
July 6, 2017, the criminal charges were time barred, unless the
prosecution could establish, by a preponderance of the evidence,
that the victims first reported substantial sexual conduct to a
California law enforcement agency no earlier than July 7, 2016.
According to defendant, at the close of its case-in-chief, the
prosecution did not make a prima facie showing that the charges
were timely because the evidence showed that V.H.'s report to the
Holland Department on March 25, 2016, described defendant's
touching of V.H.'s genitals and masturbation and therefore
constituted "substantial sexual conduct" under section 803,
subdivision (f)(2).  Moreover, in defendant's view, because (1) the
LAPD directed V.H. to make a report to the Holland Department,
(2) V.H. asked the Holland Department to fax the report to
LAPD, and (3) the Holland Department then delivered the report
to LAPD, the March 25, 2016, was, as a matter of law, a report to
a California law enforcement agency.  We disagree.

Because neither V.H.'s March 25, 2016, report to the
Holland Department nor its contents were introduced at trial, the
evidence did not establish that the report included a description
of "substantial sexual conduct."  As explained, no witness at trial
testified about the contents of V.H.'s report.  Thus, at the time
defendant moved to dismiss the charges, there was no evidence
supporting his assertion on appeal that V.H. reported substantial
sexual conduct in March 2016.

Accordingly, even if we were to agree that under the
circumstances of this case, V.H.'s report to the Holland
Department constituted a report by a victim to a California law

12

enforcement agency, the evidence did not show that it described "substantial sexual conduct" such that it triggered the statute of limitations, barring defendant's prosecution, as a matter of law.

Instead, on this record, we conclude the prosecution presented sufficient evidence to demonstrate that the charges were not time barred. The prosecution presented evidence that J.R. made a report to Detective Gallegos on July 27, 2016, which described substantial sexual conduct, masturbation. The prosecution also presented evidence that V.H. first made a direct report to a California law enforcement agency on January 31, 2017, when she told Detective Conception about defendant's masturbation.

Thus, the state of the evidence at the time defendant moved to dismiss the charges under section 1118.1 was sufficient to show that the first reports of qualifying substantial sexual conduct were made within the limitations period.

B. *Instructional Error*

Defendant next argues that the trial court prejudicially erred when, in response to a jury question, it gave a supplemental instruction advising the jurors that they could not review the victims' reports to the Holland Department because they were hearsay and when it further advised them that the reports were not made to a California law enforcement agency for purposes of section 803, subdivision (f).

13

1.     Background

Prior to trial, defendant moved to exclude J.R.'s report to the Holland Department, arguing that it was not admissible for any purpose. At trial, neither party marked or moved to admit the Holland police reports made by V.H. and J.R.

Following the denial of defendant's section 1118.1 motion to dismiss, the trial court discussed jury instructions with counsel. On the statute of limitations, the court asked counsel if CALCRIM No. 3410 was acceptable to the parties without modification. Both parties agreed that it was acceptable.

The trial court therefore instructed the jury on the statute of limitations with CALCRIM No. 3410 which advised that section 803, subdivision (f) extended the statue under specified circumstances and that the prosecution had the burden of showing that the five statutory requirements for an extension applied. On the issue of whether either victim made a report to a California law enforcement agency as required, the instruction provided: "'*Reported to a California law enforcement agency,*' requires that the victim personally report substantial sexual conduct directly to a California law enforcement agency in order to start the one-year period to file a criminal complaint. Reporting indirectly by a person other than the victim is not sufficient. Reporting by the victim to an agency that is not a California law enforcement agency is not sufficient, even where the victim's reported abuse is forwarded by that agency to a California law enforcement agency. Also, when a victim personally reports sexual abuse directly to a California law enforcement agency, but that reporting does not include factual

14

details amounting to substantial sexual conduct, such reporting is not sufficient to start the one-year period."

During argument, the prosecutor addressed the requirement of a report to a California law enforcement agency, arguing that "it doesn't matter that [J.R. and V.H.] reported to Holland, Michigan. That doesn't count. This is a personal right that a victim has in order to revive an expired statute of limitations. It has to come from their words directly to a California law enforcement agency. No if's, and's, or but's." She also addressed the requirement that the report describe substantial sexual conduct, arguing that "it needs to involve substantial sexual conduct . . . which includes . . . masturbation and oral copulation and penetration."

During his argument, defense counsel stated that the issue of "whether or not the prosecution filed this case within the one year [limitations period], [was] highly contested by [the] defense. Highly, highly contested." Counsel focused on J.R.'s January 2016 conversation with Detective Gallegos, arguing that the detective's version of a short call with no details of abuse was not credible because J.R. claimed to have spoken to him for an estimated 20 to 45 minutes. He further argued that, on cross-examination, J.R. admitted that he disclosed details of sexual molestation in that January call, despite claiming on direct that he did not disclose those details until July 2016. Defense counsel did not mention, however, V.H.'s March 2016 hand-written report to the Holland Department or contend that her report of abuse to that agency described substantial sexual conduct.

During deliberations, the jury asked the trial court to clarify "the <u>law</u> regarding what triggers the one year time-line of [the] July 27, 2017 filing." During the court's subsequent

15

discussion of the question with the parties, it suggested reviewing CALCRIM No. 3410 with the jury, and defense counsel responded that "in response to that [question], I think that is specific, . . . and just referring back to the instructions and that's it. The instruction is very clear as to what they need to do. [¶] . . . [¶] . . . [T]hey should know it is for them to decide when the one-year statute of limitations was triggered. Add that, please."

The trial court then reread CALCRIM No. 3410 to the jury and explained that "[t]here are no exceptions for that. It is written as-is. This is an absolute statement."

The jury next requested, among other things, "[d]ocuments, a reading or further factual information about the contents of the Holland, Michigan report or why we cannot receive such." During a discussion of the question with counsel, the trial court explained that the report had not been marked or admitted and therefore was not available for the jury to review. In response to a question from the prosecutor, the court indicated its intent to inform the jury that the reports were hearsay, and defense counsel did not object.

After a break in the proceedings, the trial court read into the record a proposed answer to the jury it had drafted and invited counsel to comment. The proposed answer read: "The Holland, Michigan Police Department Report is inadmissible hearsay, and it is not a report to a California Law Enforcement Agency. Therefore, the report itself was not offered as evidence, and the jury may not see it. The content of the police report is admissible only to the extent that witnesses at trial testified to the contents of the report. Therefore, a reading for witness testimony that referenced the report and its contents will be given. This includes the specific references in the testimony of

16

[J.R.] and [V.H.]  Further references are contained in the testimony of Detective Gallegos as a part of request No. 1, above.[13]

Defense counsel responded to the trial court's proposal as follows:  "Your Honor, I think the jury is asking us . . . why they cannot have this report.  And the answer to that question is No. 1, the report, itself, is inadmissible, not because it is not reported to a California law enforcement agency.  That portion of your statement, Your Honor, does not go to the question posed by the jury.  That is over and above what they're asking for, and I believe that's already in the instructions.  [¶] . . . [¶]  But the answer to their question, why they can't have that report, the answer is not that it is not a report to a California law enforcement agency.  That is not the answer to their question."

The trial court responded that if V.H. had submitted her written statement to the LAPD directly, it would have been admissible, but maintained that her handwritten statement to the Holland Department was "rank hearsay to a non-California law enforcement agency."

Following further discussion of the proposed answer, the trial court and defense counsel had the following exchange:  "[Defense counsel]:  The Michigan police department faxed that statement to them immediately.  They got it within a day of [her] reporting, which was in March, beyond the statute of limitations. . . .  Maybe Your Honor, based on the case law, is thinking that going to Michigan and making your report of the incident is not to [a] California law enforcement agency.  [¶]  But that report was faxed to them.  [It was] received by [LAPD]  The jury is

_____

[13]    The jury had asked, in the same jury note, for "[a] full reading of Gallegos' test[i]mony."

17

entitled to evaluate that and make their own decision based on that. [¶] The Court: To what? To decide whether that constitutes a report to a California law enforcement agency? [¶] [Defense counsel]: Absolutely. [¶] The Court: That is where I disagree with you. That's going to be an honest disagreement on the reading of the law."

The trial court then informed the parties that it would give its written answer to the jury.

### 2. Legal Principles

"The court has a primary duty to help the jury understand the legal principles it is asked to apply." (*People v. Beardslee* (1991) 53 Cal.3d 68, 97.) During jury deliberations "when the jury 'desire[s] to be informed on any point of law arising in the case . . . the information required must be given.'" (*People v. Brooks* (2017) 3 Cal.5th 1, 97, quoting § 1138.) "This does not mean the court must always elaborate on the standard instructions. Where the original instructions are themselves full and complete, the court has discretion under section 1138 to determine what additional explanations are sufficient to satisfy the jury's request for information." (*People v. Beardslee, supra*, 53 Cal.3d at p. 97.)

We apply "the abuse of discretion standard of review to any decision by a trial court to instruct, or not to instruct, in its exercise of its supervision over a deliberating jury." (*People v. Waidla* (2000) 22 Cal.4th 690, 745–746.) "If a supplemental instruction is given, however, its correctness presents a question of law that we review de novo." (*People v. Franklin* (2018) 21 Cal.App.5th 881, 887, fn. 4.)

18

3. <u>Analysis</u>

a. Forfeiture

The Attorney General asserts that defendant forfeited (1) his contention that the trial court erred by instructing the jury that the Holland Department reports were hearsay; and (2) his contention that the supplemental instruction misinformed the jury that neither of the Holland Department reports constituted a report to a California law enforcement agency for purposes of the statute of limitations. We agree, in part.

Defendant did not object to the trial court's proposal to inform the jury that the Holland Department reports were hearsay and that was the reason they could not be reviewed by the jury. Thus, the contention was forfeited by failure to adequately raise it in the trial court. (*People v. Ross* (2007) 155 Cal.App.4th 1033, 1048 ["A defendant may forfeit an objection to the court's response to a jury inquiry through counsel's consent, or invitation or tacit approval of, that response"].)

Moreover, defendant's argument that, under Evidence Code section 1200, V.H.'s report to the Holland Department was "not hearsay, as not offered for the truth of the matter asserted and as relevant to an issue in dispute," is misguided as neither party sought to introduce the report into evidence, and the trial court therefore made no ruling during testimony excluding it. Nor did defendant request that evidence be reopened to allow for the admission of the report or otherwise suggest that the jury be allowed to consider the actual report.

Defendant did not, however, forfeit his contention that it was error for the trial court to instruct the jury that the Holland

19

Department reports did not qualify as personal reports of the victims to a California law enforcement agency. During the discussion of the jury question and the court's proposed response, defense counsel argued that the jury should be allowed to determine whether the reports qualified under section 803, subdivision (f) as a report to a California law enforcement agency, but the court disagreed and gave the supplemental instruction as proposed. Defendant thus preserved the contention for review on appeal.

### b. Harmless error

Even if we assume, without deciding, that the trial court erred when it instructed the jury that the Holland Department reports did not constitute the requisite direct personal victim reports to a California agency, any such error was harmless. Defendant's challenge on appeal concerning instructional error is premised on the jury being able to consider the contents of V.H.'s report to the Holland Department in March 2016, which, defendant contends, described substantial sexual conduct. But there was no evidence at trial that V.H. reported substantial sexual conduct to the Holland Department. As explained, the report itself was not introduced in evidence, and V.H. did not testify, from memory or otherwise, as to the description she wrote in the report. Thus, even if the jury had been allowed to consider whether the evidence showed that V.H. and J.R. constructively made reports of abuse to the LAPD through the Holland Department, there was no evidence that either of them reported substantial sexual abuse to that Michigan agency. The presumed instructional error was therefore harmless beyond a reasonable

doubt.  (See *People v. Stanfill* (1999) 76 Cal.App.4th 1137, 1153–1154 [applying *Chapman*[14] standard of harmless beyond a reasonable doubt to determine whether erroneous instruction on statute of limitations was prejudicial].)

### c.     Ineffective Assistance

As to the hearsay issue only, defendant contends that if the issue was forfeited, he received ineffective assistance of counsel. According to defendant, "there could be no tactical reason for counsel to agree the reports were inadmissible hearsay because they were not hearsay."  (Fn. omitted.)

To establish ineffective assistance of counsel, a defendant must show that defense counsel's performance was deficient and prejudicial—i.e., that there was a reasonable probability of a different outcome absent counsel's deficient performance.  (*People v. Mai* (2013) 57 Cal.4th 986, 1009.)  A reviewing court may resolve an ineffective assistance claim by deciding only the question of prejudice.  (*Strickland v. Washington* (1984) 466 U.S. 668, 697 ["If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed"].)

Defendant cannot show a reasonable probability that there would have been a different outcome absent any deficient performance by trial counsel.  Defendant's argument on appeal is premised on the jury being able to consider the contents of V.H.'s report to the Holland Department, which defendant argues contained information about substantial sexual conduct.  But at

---

[14]     *Chapman v. California* (1967) 386 U.S. 18.

the time of the jury question that resulted in the challenged instruction, V.H.'s report was not in evidence and there was no testimony concerning the contents of V.H.'s report. Thus, the trial court's explanation for why the report was not entered into evidence would not change the jury's ability to consider its contents. Defendant therefore cannot establish prejudice.

## V.    DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

MOOR, J.