Filed 3/27/26  P. v. Dearman CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Colusa)

----

| | |
|---|---|
| THE PEOPLE, | C102262 |
| Plaintiff and Respondent, | (Super. Ct. Nos. CR62118, CR603212, CR61817) |
| v. | |
| RYAN ALAN DEARMAN, | |
| Defendant and Appellant. | |

Four years after the trial court dismissed (on the People's motion) a domestic violence case then pending against defendant Ryan Alan Dearman, defendant filed a Penal Code section 851.8[1] petition seeking a finding of factual innocence in that case, which was also the factual basis for two probation violations.  The court denied the petition as untimely and insufficient to establish innocence.

---

[1] Undesignated statutory references are to the Penal Code unless otherwise specified.

1

On appeal, defendant claims he had good cause for delay in filing his petition, and that the court incorrectly concluded that its prior finding of probable cause at the preliminary hearing foreclosed relief, resulting in prejudicial error.  As we next explain, we affirm the order denying the petition.

BACKGROUND

In November 2019, defendant was convicted of dissuading a witness and battery of a cohabitant in superior court case No. CR60321-2.  We refer to this case as the dissuading/battery case.  (See *People v. Dearman* (Jun. 27, 2022, C093195) [nonpub. opn.] (*Dearman*).)[2]  The trial court placed defendant on formal probation for three years. (*Ibid*.)

In March 2020, the People filed complaint No. CR61817, charging defendant with being a felon in possession of a firearm; the People also filed a petition to revoke his probation in the dissuading/battery case.  (*Dearman, supra,* C093195.)  He pleaded no contest to the firearm charge and the court violated but reinstated his probation for a three-year term on both the current (firearm) and prior (dissuading/battery) convictions. (*Ibid*.)

On July 16, 2020, defendant's former girlfriend, Brenda, was treated at a hospital for injuries.  (*Dearman, supra,* C093195.)  She told the police that at around 2:00 p.m., she and defendant argued and he physically assaulted and threatened her.  The responding officer photographed her injuries.  (*Ibid.*)

On August 6, 2020, the People filed complaint No. CR62118, "charging defendant with corporal injury to a cohabitant and disobeying a domestic relations order." (*Dearman, supra,* C093195.)  We refer to this case as the domestic violence case.  The

---

[2]  We construed defendant's request to augment the record as a motion to incorporate by reference the record in case No. C093195 and granted the motion.

People also filed a petition to revoke defendant's probation in the dissuading/battery and firearm cases. (*Ibid*.)

The trial court held a consolidated hearing encompassing both the probation revocation petition for the dissuading/battery and firearm cases and the preliminary hearing for the domestic violence case. (*Dearman, supra,* C093195.) When defendant's brother, "an eyewitness vital to his defense," did not appear at the consolidated hearing, defendant requested a continuance. (*Ibid.*) The court denied the request and proceeded with the hearing. (*Ibid.*)

The responding officer testified that on July 16, 2020, Brenda told him defendant physically assaulted her that afternoon. (*Dearman, supra,* C093195.) He observed injuries to her arms, neck, and face, including popped blood vessels in her eye. Based on his previous encounters with Brenda, "she appeared sober when he spoke to her." (*Ibid*.) "[T]he condition of the residence appeared consistent with a scuffle." (*Ibid.*)

Brenda testified that she could not recall "the details of their conversation" and could not recall telling the officer that defendant physically assaulted and threatened her. (*Dearman, supra,* C093195.) She said that she was heavily intoxicated on July 16 and was surprised she "didn't black out." (*Ibid.*) Because she was so intoxicated, she could not recall how she was injured; she did not recall defendant assaulting her. (*Ibid.*) She authenticated documents that she had mailed to defendant, wherein she had written that "defendant did not touch her on July 16 and that she wanted the charges against [him] dropped." (*Ibid*.) She denied discussing the contents of the documents with defendant. (*Ibid*.)

Defendant's co-worker testified that he had known defendant over a year. (*Dearman, supra,* C093195.) He and defendant, along with defendant's brother, fixed houses together. On July 16, the two men picked up defendant between noon and 1:00 p.m. to drive to the Bay Area for a project. When they left, Brenda, who appeared "very intoxicated," was standing outside drinking a beer; she had no visible injuries.

3

(*Ibid*.)  The three men returned around 6:00 p.m. or 7:00 p.m.  The co-worker could not recall details of the work project.  (*Ibid*.)

The trial court expressed concerns about Brenda's and the co-worker's credibility.  (*Dearman, supra,* C093195.)  The court credited the version of events Brenda told the responding officer at the hospital on July 16, found defendant violated his probation in the dissuading/battery and firearm cases, and held defendant over for trial in the domestic violence case.  (*Ibid.*)

On November 10, 2020, the trial court sentenced defendant to an aggregate term of three years in prison for violating his probation in the two prior cases and granted the People's motion to dismiss the current (domestic violence) case due to the prison sentence already imposed.  (*Dearman, supra,* C093195.)

On June 27, 2022, a different panel of this court reversed the trial court's orders revoking and terminating defendant's probation in the dissuading/battery and firearm cases and remanded the matter for a new revocation hearing.  (*Dearman, supra,* C093195.)  The reversal was due to the trial court's refusal to continue the consolidated hearing to secure defendant's brother's alibi testimony.  (*Ibid*.)  The holding order in the (already dismissed) domestic violence case was not challenged.

On remand, the People moved to dismiss the revocation petition and terminate defendant's probation as to both prior cases, because defendant had already served his sentence.  The trial court granted the People's motion on October 25, 2022.

On September 18, 2024, defendant filed a section 851.8 petition requesting a finding of factual innocence of the domestic violence case.  At the hearing on defendant's petition, the trial court noted that it presided over the consolidated probation revocation and preliminary hearing, and based on the evidence at the hearing, the court found probable cause to hold defendant in the domestic violence case.  The court explained, because it held defendant "over on those charges, . . . [it] had to have made a finding at

4

that time that reasonable cause did exist to believe that [defendant] committed that offense."

The trial court further found defendant's petition was time-barred, as we later discuss. The court then reviewed and considered the new evidence defendant included with his petition.

In a declaration filed in support of defendant's petition, Brenda stated that defendant went to work with his co-worker and brother on July 16, 2020. Defendant was "very professional on an everyday basis," and "did not argue or fight with [her]" on July 16. She asked for the charges against him to be dropped because "they [were] fraudulent."

Defendant's brother declared that defendant was with him and the co-worker on July 16, 2020, and that "Brenda was unharmed when [they] left." Specifically, the two men picked up defendant from his house on July 16 at noon. While there, he saw Brenda standing on the porch; she was unharmed. They left around 12:15 pm to go to San Jose.

The People argued that the evidence defendant presented was insufficient "to show that there was no reasonable cause" to charge defendant with domestic violence. They added that defendant's petition was time-barred.

After reviewing the declarations and the consolidated hearing transcript, the trial court stated defendant did "not qualify" for relief under the statute, that it was not declaring him "factually innocent," and denied the petition. In denying the petition, the court also rejected defendant's argument that reversal of the probation revocation order on appeal indicated he was factually innocent. The court explained that the reversal was due to the denial of defendant's request to continue the hearing, not because of a lack of evidence of guilt.

Defendant timely appealed.

5

DISCUSSION

I

*Statute of Limitations*

We first address defendant's claim that the trial court erred in determining his petition was time barred. " "When an issue involving the statute of limitations has been tried, we review the record to determine whether substantial evidence supports the findings of the trier of fact.' " (*People v. Petronella* (2013) 218 Cal.App.4th 945, 957.) We review purely legal questions regarding whether the statute of limitations bars an action de novo. (*People v. Brown* (2018) 23 Cal.App.5th 765, 772.)

Section 851.8 provides a mechanism for sealing and destroying the arrest records of individuals who are factually innocent. (*People v. O'Day* (2022) 85 Cal.App.5th 426, 432.) In any case where a defendant was arrested, and an accusatory pleading filed, but where the People did not secure a conviction, after dismissal of the action, the defendant may petition a court for a finding that they are factually innocent. (*Ibid*; § 851.8, subd. (c).)[3] The petition must be filed no later than two years from the date of arrest or the filing of an accusatory pleading, whichever is later. (§ 851.8, subd. (l).) A trial court may waive the statute of limitations, however, where a petitioner demonstrates good cause for the delay and there is an absence of prejudice. (*Ibid*; *O'Day*, at p. 433.)

Section 851.8, subdivision (l) required defendant to file his petition within two years of the date of his arrest or the date the People filed the complaint charging him with corporal injury on a cohabitant, whichever was later. Defendant does not argue that his

---

[3] Only three classes of persons may petition a trial court for a finding of factual innocence under section 851.8: " '(1) persons who have been arrested but no accusatory pleading has yet been filed [citation]; (2) persons who have been arrested and an accusatory pleading has been filed but no conviction has occurred [citation]; and (3) persons who are "acquitted of a charge and it appears to the judge presiding at trial . . . that the defendant was factually innocent." ' " (*People v. Mazumder* (2019) 34 Cal.App.5th 732, 738.)

petition was filed within the applicable timeframe. He argues only that the trial court was required to waive application of the statute of limitations because "the delay was justified and the deadline was tolled." He adds without citing any authority that the trial court "had both the authority and the obligation to consider good cause and prejudice before denying relief solely for untimeliness" and contends that equitable tolling applies.

Although defendant argues throughout his briefing that the burden was on the trial court to find the absence of good cause and prejudice, no authority supports this assertion where, as here, an argument for good cause was not raised by defendant in the trial court in the first instance. Defendant does not dispute that his good cause argument is raised for the first time on appeal. In the trial court, the prosecutor noted that defendant had neither offered good cause for the delay nor explained why the declarations from Brenda and his brother could not have been provided within the two-year statute of limitations period; defendant failed to offer any justification for the delay in the trial court.

Defendant's failure to raise this issue below deprives us of a record to determine whether there was error and forfeits the issue on appeal. (*People v. Gerold* (2009) 174 Cal.App.4th 781, 787.)

## II

### *De Novo Review on the Merits*

Even if we assume the petition was required to be heard on the merits despite its untimeliness, defendant's argument for reversal fails. Defendant contends the trial court equated reasonable cause with probable cause, and prejudicial error resulted. But this argument ignores the requirement, which defendant acknowledges elsewhere in his briefing, that we review a trial court's denial of a petition for factual innocence *de novo*. (See *People v. Adair* (2003) 29 Cal.4th 895, 897, 905, 907 (*Adair*).) Although we "defer to the trial court's factual findings to the extent they are supported by substantial evidence, [we] must independently examine the record to determine whether the

7

defendant has established 'that no reasonable cause exists to believe' he . . . committed the offense charged." (*Id*. at p. 897.)

The Legislature enacted section 851.8 for the benefit of those defendants who have not committed a crime. (*Adair, supra*, 29 Cal.4th at p. 905.) The burden to establish factual innocence is "incredibly high," requiring a defendant to show "no doubt whatsoever." (*People v. Mazumder, supra,* 34 Cal.App.5th at p. 738.) Therefore, a trial court may not make "[a] finding of factual innocence and an order for the sealing and destruction of records . . . unless the court finds that *no reasonable cause* exists to believe that the [defendant] committed the offense for which the arrest was made." (§ 851.8, subd. (b), italics added; *Adair,* at p. 904.) " ' " 'Reasonable cause' " ' is a well-established legal standard, ' "defined as that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." ' " (*Adair*, at p. 904.) Essentially, to be declared factually innocent, a defendant must demonstrate that there were no objective facts from which a person of ordinary care and prudence could entertain an honest and strong suspicion that they committed the offense, and that the absence of those facts compels the conclusion that the defendant should not have been subjected to the criminal justice process. (*Id.* at pp. 904-905, 909.) "[T]he record must exonerate [the defendant], not merely raise a substantial question as to guilt." (*Id.* at p. 909.)

In the present case, the record firmly establishes that defendant failed to meet his burden to establish his factual innocence. (§ 851.8, subd. (b); *Adair, supra*, 29 Cal.4th at p. 905.) As we have discussed, to succeed on his petition, defendant had to demonstrate there was no reasonable cause to believe he committed domestic violence. (§ 851.8, subd. (b).) This required him to prove there were no objective facts from which a person of ordinary care and prudence could entertain an honest and strong suspicion that he committed the offense, and the absence of those facts compelled the conclusion that he should not have been subjected to the criminal justice process. (*Adair,* at pp. 904, 909.)

8

Our de novo review of this record reveals objective facts that would lead a reasonable person to entertain a strong suspicion that defendant committed the offense of domestic violence against Brenda. (*Adair, supra,* 29 Cal.4th at pp. 897, 904, 909.) Specifically, the responding officer testified that he observed injuries to Brenda's arms, neck, and face, and she reported that defendant assaulted her. (*Dearman, supra,* C093195.) Photographs of her injuries were also introduced into evidence. (*Ibid.*) Although the later recantations by Brenda and post-hearing declaration by defendant's brother certainly may have *weakened* the case against defendant, they did not erase the "strong suspicion" that Brenda's earlier statement and documented injuries would generate when considered by a reasonable person. " ' "[F]actually innocent" as used in [section 851.8, subdivision (b)] does not mean a lack of proof of guilt beyond a reasonable doubt or even by "a preponderance of evidence." ' " (*Adair,* at p. 909.) To be declared factually innocent, a defendant must show no objective factors justified official action against them. (*Ibid.*)

Here, the record contains objective facts from which a person of ordinary care and prudence could entertain an honest and strong suspicion that defendant committed domestic violence, which precludes a finding of factual innocence under the statute. (§ 851.8, subd. (b); *Adair, supra*, 29 Cal.4th at pp. 904, 909.) Although defendant argues our earlier reversal of his probation violations and the trial court's subsequent consideration of the same evidence introduced at the consolidated hearing "undermine[]" the trial court's "determination" here, the applicable burdens and considerations are not comparable. Further, that argument does not comport with the applicable standard of review. As we have explained *ante*, the record reveals the basis for a strong suspicion that defendant committed domestic violence, which precludes a finding of factual innocence under the statute. Thus, the order denying the petition was not entered in error.

DISPOSITION

The trial court's order denying the petition is affirmed.


                                                          /s/
                                            Duarte, Acting P. J.


We concur:


      /s/
Renner, J.


      /s/
Mesiwala, J.